## STATE OF CONNECTICUT *v.* ELKIE LEE CRUMP
## (11224)

HEALEY, SHEA, DANNEHY, CALLAHAN and QUINN, Js.

Argued October 10—decision released December 2, 1986

*Bruce L. Levin,* special public defender, for the appellant (defendant).

*Patricia B. Perkins,* special assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Susann E. Gill,* deputy assistant

state's attorney, and *Marc Needelman,* former deputy assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The crimes involved in this case arose out of a robbery of a restaurant in Hartford on January 29, 1981. After a trial to the court, *Kremski, J.,* the defendant, Elkie Lee Crump, was found guilty under both counts of a substitute information which charged the crimes of robbery in the second degree, in violation of General Statutes § 53a-135,[1] and conspiracy to commit robbery in the second degree, in violation of General Statutes §§ 53a-135 and 53a-48.[2] This appeal followed.

On appeal, the defendant claims that there was "insufficient evidence" to sustain the trial court's finding that he was guilty of robbery in the second degree and conspiracy to commit robbery in the second degree,[3] that he did not knowingly and intelligently waive his right to a jury trial and that he was denied the effective assistance of counsel.[4] We find no error.

[1] General Statutes § 53a-135 provides in part: "(a) A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present; or (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

[2] General Statutes § 53a-48 provides in part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

[3] Although the defendant's amended statement of issues and his brief refer to the insufficiency of the evidence to sustain the guilty finding on the crime of robbery in the *first* degree, it is clear from the structure of his brief and oral argument that this was meant to refer to conspiracy to commit robbery in the *second* degree, one of the crimes with which he was charged and of which he was found guilty.

[4] This claim of error requires no discussion as it is improperly before us. *State* v. *Leecan,* 198 Conn. 517, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).

We turn first to the claim that the evidence was "insufficient." Although the defendant does not dispute the factual findings made, he does claim that those findings fail to support a conclusion of guilt of either crime charged. " 'This court will construe the evidence in the light most favorable to sustaining the trial court's verdict and will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom. *State* v. *Perez,* 182 Conn. 603, 606, 438 A.2d 1149 (1981); see, e.g., *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980); *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38 (1980); *State* v. *Avcollie,* 178 Conn. 450, 466, 423 A.2d 118 (1979). Our review is the same whether the trier of fact is a judge, a panel of judges, or a jury. *State* v. *Perez,* supra; see *State* v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977).' *State* v. *D'Antuono,* 186 Conn. 414, 421, 441 A.2d 846 (1982)." *State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984). " 'The trier of the facts determines with finality the credibility of witnesses and the weight to be accorded their testimony. "We cannot retry the facts or pass upon the credibility of the witnesses." *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975).' " *State* v. *Haddad,* 189 Conn. 383, 389, 456 A.2d 316 (1983), quoting *State* v. *Penland,* 174 Conn. 153, 157–58, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978). In reviewing the evidence upon which the trier of fact relied in reaching its conclusion, we must recognize that "the burden rested upon the [state] to prove the guilt of the accused, i.e., to prove each material element of the offense[s] charged beyond a reasonable doubt. *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 [1975] . . . . " *State* v. *Haddad,* supra, 388.

It will be useful in our review of the defendant's claim to set out at this point the findings[5] upon which the trial court based its conclusions. These findings include: On the date in question, the defendant entered a restaurant in Hartford with two other black males. The three then had a conversation among themselves, after which the defendant and another of the men went to the counter near the cash register while the third left the restaurant. One of the two men who remained (the defendant or his companion)[6] ordered a soft drink at the counter and money was proffered to the victim, Julia Pelarinos, for the drink which was presented. When Pelarinos opened the cash register to deposit the money, she was pushed aside by the man who had ordered the soft drink. He then took approximately $300 from the opened cash register drawer. The two men immediately hurried from the restaurant. The man who did not take the money from the cash register opened the door "to assist" the man with the $300 to leave. After exiting the restaurant, both entered a waiting automobile "being operated" by the third man, who had left the restaurant earlier. The automobile then left the scene.

[5] After the parties had rested, the trial court, in an oral decision, made certain findings of fact upon the basis of which it concluded that the defendant was guilty of the crimes charged in both counts of the substitute information. Some time later and after a motion for articulation by the defendant's appellate counsel, the trial court more fully articulated its decision by responding to specific inquiries in that motion. See generally Practice Book § 4061 (formerly § 3060D); State v. Lafferty, 192 Conn. 571, 572, 472 A.2d 1275 (1984).

[6] After the trial court's response to the "Motion for Articulation," the defendant's appellate counsel filed a "Motion for Further Articulation" in which he asked the trial court to state which of the two men ordered the soft drink "if known," as well as which of them gave the money to the victim "if known." In its "Further Articulation" the trial court stated that "it is not known" which one ordered the soft drink or which presented the money for its payment.

Initially, the defendant claims that he could not be found guilty as an accessory[7] on the robbery count, as the state now contends, because the state did not so charge him in the substitute information, did not so claim at trial and did not advance that theory as an alternative ground of affirmance under Practice Book § 3012 (a) (now § 4013 [a] [1]). This argument lacks merit because the fact that the defendant was not formally charged as an accessory does not preclude his being so convicted. *State* v. *Johns,* 184 Conn. 369, 373–74 n.7, 439 A.2d 1049 (1981); *State* v. *Ives,* 172 Conn. 322, 323, 374 A.2d 244 (1977); see *State* v. *Raffone,* 161 Conn. 117, 128, 285 A.2d 323 (1971).

Contrary to the defendant's claim, there was sufficient evidence to prove that he was guilty of robbery in the second degree. A robbery is committed when, in the course of committing a larceny, a person uses or threatens the immediate use of physical force upon another person for any of the purposes set out in General Statutes § 53a-133.[8] Conviction of a simple larceny requires proof of the taking of the property of another with the intent to deprive the owner of possession permanently. *State* v. *Kurvin,* 186 Conn. 555, 556, 442 A.2d 1327 (1982); see General Statutes §§ 53a-118, 53a-119.[9]

---

[7] General Statutes § 53a-8, entitled "Criminal liability for acts of another," provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[8] General Statutes § 53a-133, which defines robbery, provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[9] General Statutes § 53a-119 provides in part: "A person commits larceny when, with intent to deprive another of property or to appropriate

The findings contained in the trial court's decision, as originally given and as later articulated, which we have set out, are adequate to justify beyond a reasonable doubt the conclusion that the defendant was guilty of being an accessory to the crime of robbery in the second degree. The commission of a robbery in the context of the larceny with its accompanying use or threat of use of immediate force upon Pelarinos for either of the purposes set out in General Statutes § 53a-133 was proven. In this case, the defendant or his companion actually pushed Pelarinos away from the open cash register and took the $300 from it. It is not required that the proof show that the defendant was the actual perpetrator because the proof does show that the perpetrator "[was] aided by another person actually present." General Statutes § 53a-135 (a) (1).[10] The defendant contends that the state did no more than prove that he was merely innocently present. We do not agree. We recognize that " '[m]ere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consummate it.' State v. Laffin, 155 Conn. 531, 536, 235 A.2d 650 (1967)." State v. Maltese, 189 Conn. 337, 343, 455 A.2d 1343 (1983). We find, however, that the evidence in this case supports the conclusion of the

the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[10] The 1971 comments of the commission to revise the criminal statutes contain the following concerning General Statutes § 53a-135: "Robbery in the second degree makes the presence of an accomplice an aggravating factor. The rationale is that the accomplice is equal to a person armed and therefore would generate a higher degree of fear in the victim." Conn. Gen. Stat. Ann. § 53a-135 (West), see State v. Acklin, 171 Conn. 105, 118, 368 A.2d 212 (1976).

trial court of the defendant's complicity as either a principal or an accessory in the crime of robbery in the second degree.

Whether a person who is present at the commission of a crime aids or abets its commission so as to be criminally liable depends on the circumstances surrounding his presence there and his conduct while there. " 'The accessory statute, § 53a-8, sets forth the element of intent as a twofold requirement: that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged. See LaFave & Scott, Criminal Law (1972), p. 505 n.53, § 64.' (Emphasis in original.) *State* v. *Harrison,* [178 Conn. 689, 694, 425 A.2d 111 (1979)]." *State* v. *Haddad,* supra, 399. "A person acts 'intentionally' with respect to a result or conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct." General Statutes § 53a-3 (11). Intent is a mental process, and absent an outright declaration of intent, must be proved through inferences drawn from the actions of an individual, i.e., by circumstantial evidence. *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980); *State* v. *Harrison,* 178 Conn. 689, 695, 425 A.2d 111 (1979). There is, of course, no legal distinction between direct and circumstantial evidence as far as probative force is concerned. *State* v. *Wilson,* 178 Conn. 427, 434, 423 A.2d 72 (1979). "It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981); see *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984). "It is clear that since the guilt of one who aids or abets is equal to the guilt of one who actually commits the crime, that statute [here General Statutes § 53a-8] renders anyone who comes within its terms guilty as a principal offender."

*State* v. *Raffone,* supra. The findings show that the defendant was "not passively acquiescent nor acting innocently." *State* v. *Haddad,* supra.

The defendant next claims that the evidence upon which the trial court relied was insufficient to support its conclusion that the defendant participated in a conspiracy[11] to commit robbery in the second degree. We do not agree.

At the end of the trial, the trial court, after stating orally its findings of fact and conclusions on the robbery count, then immediately went on and stated: "With regard to the charge of conspiracy to commit robbery in the second degree, the court finds that the facts as indicated by the court there was an intent to engage in criminal activity, that is, the robbery of that building. That intent is inferred from the facts that the three parties entered together, had a conference, that they split up each taking a particular position, that the robbery occurred, that there was an agreement, however sketchy, that agreement or plan was a plan devised by the parties and carried out. An overt act was committed, the taking of the money. All three parties left the premises at the same moment. Based on those facts, the court finds that Elkie Lee Crump is guilty of the charge of conspiracy."

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. *State* v. *DeMatteo,* 186 Conn. 696, 707, 443 A.2d 915 (1982). 'The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they "knowingly engaged in a mutual plan to do a for-

[11] See footnote 2, supra.

bidden act." *State* v. *Holmes,* 160 Conn. 140, 149, 274 A.2d 153 [1970]. A conviction of the crime of conspiracy can be based on circumstantial evidence, for conspiracies, by their very nature, are formed in secret and only rarely can be proved otherwise than by circumstantial evidence. *State* v. *Holmes,* supra, 150.' *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975); *State* v. *Hayes,* 127 Conn. 543, 554, 18 A.2d 895 (1941)." *State* v. *Vessichio,* 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). Thus, because a conspiracy can rarely be proved by direct evidence, "[i]t may be inferred from the activities of the accused persons." *State* v. *Baker,* 195 Conn. 598, 604, 489 A.2d 1041 (1985); *State* v. *Faillace,* 134 Conn. 181, 185, 56 A.2d 167 (1947).

The evidence and the reasonable inferences therefrom establish the necessary proof under General Statutes § 53a-48 that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act by the actual robber in furtherance of the conspiracy. We are aware that the commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses. *State* v. *Johnson,* 162 Conn. 215, 219, 292 A.2d 903 (1972); see *Pinkerton* v. *United States,* 328 U.S. 640, 643, 66 S. Ct. 1180, 90 L. Ed. 1489, reh. denied, 329 U.S. 818, 67 S. Ct. 26, 91 L. Ed. 697 (1946).

The defendant also claims that the trial court erred both in "assuming" that his waiver of his right to a jury trial was knowingly and voluntarily made and in accepting his election of a court trial in violation of his rights under the sixth amendment[12] to the United

___

[12] The sixth amendment to the United States constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State . . . wherein the crime shall have been committed . . . ."

States constitution, General Statutes § 54-82b[13] and Practice Book § 839.[14] Referring to *State* v. *Marino,* 190 Conn. 639, 642, 462 A.2d 1021 (1983), he claims that although this claim was never made at the trial,[15] it is nevertheless reviewable under the *Evans* bypass rule. See *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). Despite dicta to the contrary in *Marino,* the defendant argues that a claimed failure to comply with the statute and the Practice Book is reviewable under *Evans* because the failure to comply with those provisions constitutes plain error. In any event, the defendant expressly acknowledges that these arguments are "ancillary" to his constitutional claims. In addition, he argues that, given his claim of ineffective assistance of counsel, it would be incongruous not to review these claims.

In *State* v. *Marino,* supra, 642, we said: "Although the claim of an ineffective jury trial waiver is being raised for the first time on appeal, it is unquestionable that this issue involves a fundamental constitutional right guaranteed by the sixth amendment and that we must review the record to determine whether it clearly indicates that the defendant has been deprived of that

---

[13] General Statutes § 54-82b (b) provides: "In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion of the judge, the proper administration of justice requires it, the judge shall vacate the judgment and cause the proceeding to be set for jury trial."

[14] Practice Book § 839 provides: "The defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time he is put to plea, he elects a trial by the court, the judicial authority shall advise the defendant of his right to a trial by jury. If the defendant does not then elect a jury trial, his right thereto may be deemed to have been waived."

[15] The waiver issue was never raised by the defendant in his motion for a new trial or in his preliminary statement of issues. It was first raised in his amended statement by present appellate counsel.

right illegally. *State* v. *Evans,* [supra, 70]."[16] Even though in this case, unlike *Marino,* the defendant claims that the procedures set forth in General Statutes § 54-82b and Practice Book § 839 were not followed, we do not consider the deviation from those procedures by itself to "constitute a claim of constitutional error eligible for appellate review sufficient to overcome our general prohibition against raising on appeal issues never presented to the trial court." *State* v. *Marino,* supra, 643; see *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985).

"Under both the United States and Connecticut constitutions the defendant was entitled to a trial by jury on the charges upon which he was presented and in fact tried. *Duncan* v. *Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, reh. denied, 392 U.S. 947, 88 S. Ct. 2270, 20 L. Ed. 2d 1412 (1968); Conn. Const., art. I, §§ 8, 19; *State* v. *Olds,* 171 Conn. 395, 408, 370 A.2d 969 (1976). Any defendant may waive that right but only if he does so knowingly and intelligently. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 237–38, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Singer* v. *United States,* 380 U.S. 24, 34, 85 S. Ct. 783, 13 L. Ed. 2d 630 (1965)." *State* v. *Shockley,* 188 Conn. 697, 705–706, 453 A.2d 441 (1982). Whether there is such a waiver "must depend upon the unique circumstances of each case." *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 278, 63 S. Ct. 236, 87 L. Ed. 268 (1942), reh. denied and amended, 317 U.S. 605, 63 S. Ct. 442, 87 L. Ed. 568 (1943); see *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Similar to that in *State* v. *Marino,* supra, 643, "[t]he issue before us,

---

[16] We note that although the defendant's amended statement of issues referred to the Connecticut constitution, article first, § 19, on this issue, the Connecticut constitutional issue has not been briefed and we need not discuss it. See *State* v. *Corchado,* 188 Conn. 653, 670, 453 A.2d 427 (1982); *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 148–49, 448 A.2d 829 (1982).

however, is not in full measure whether the defendant acted knowingly and intelligently in waiving a jury trial, as in cases where an evidentiary hearing upon that subject has been held." We must now decide from what is properly before us whether there exists "sufficient assurance of an effective waiver at least to satisfy constitutional requirements for the disclosure of such a waiver on the record." Id., 644.

The defendant argues that the written waiver, standing alone without an acknowledgment by him orally, is an insufficient basis to establish a knowing and intelligent waiver of his jury trial right. Our examination of the waiver claim requires that we examine the proceedings below including the court file and the transcripts filed with this court. We may "take judicial notice of all papers forming a part of the file in the case and use them for any proper purpose." *Krawiec* v. *Kraft,* 163 Conn. 445, 451, 311 A.2d 82 (1972); see *State* v. *Lenihan,* 151 Conn. 552, 554, 200 A.2d 476 (1964); *Jackson* v. *United States,* 262 A.2d 106, 108 (D.C. App. 1970) ("[c]lerical entries made in the regular course of court business are presumptively true"—waiver of jury trial); W. Maltbie, Connecticut Appellate Procedure §§ 312, 313. "The notations made by the clerk upon the original papers and in the docket need no particular authentication but, appearing as made by him in the appropriate place, may be presumed to be accurate." *State* v. *Lindsay,* 109 Conn. 239, 243, 146 A. 290 (1929).

In this case, the defendant was arrested on February 19, 1981, pursuant to an arrest warrant. On February 20, 1981, he was, before his plea, advised by the court, *Shaughnessy, J.,* of his constitutional rights according to statute. General Statutes § 54-1b. On that date, the court appointed, by name, the public defender who filed his appearance, represented the defendant from that time through the trial and also filed this appeal. On February 27, 1981, the defendant pleaded not guilty to an information in one count charging him

with the crime of robbery in the second degree in violation of General Statutes § 53a-135. On June 8, 1981, at a hearing on a motion filed during the proceedings, counsel for the state informed the court that the case was "presently scheduled for the firm jury on June 16th of this year." This motion, which had been filed by the state, alleged in part: "That this matter was assigned to the Jury docket on February 27, 1981." On June 11, 1981, the state filed a substitute information in two counts. The first count charged the defendant with the crime of robbery in the second degree in violation of General Statutes § 53a-135 and the second count charged the crime of conspiracy to commit robbery in the second degree in violation of General Statutes § 53a-48. On September 8, 1981, the defendant, with his own signature as well as that of his public defender, filed his written "Change of Election" with the court.[17] On September 15, 1981, the court, *Doyle, J.,* ordered the case to be transferred from the jury to the court docket. On September 17, 1981, the defendant pleaded not guilty to both counts of the substitute information. At that time, defense counsel said: "Your Honor, consistent with the election that was filed with the court last week, we elect a trial to the court." The court did not directly address the defendant but said: "Very well. Pleas of not guilty may enter, a court trial is noted. . . . " The trial in chief commenced on September 18, 1981.

[17] The written change of election was as follows: "CHANGE OF ELECTION

"The defendant, Elkie Lee Crump, having been advised of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 8 and 19 of the Connecticut Constitution, hereby waives his right to be tried by a jury and elects to be tried by the Court in the above-entitled action.

"The Defendant
(Defendant's Signature)
Elkie Lee Crump

"(Atty. Connors' Signature)
Kevin C. Connors
His Attorney"

It is fair to say that the defendant, who was represented by counsel from the outset, elected a jury trial. His case then was assigned to the jury docket for trial where it remained until the court, on September 15, 1981, pursuant to his written change of election filed earlier, ordered the defendant's case off the jury docket and marked it as a ready case for a court trial. The change of election was signed by both the defendant and his attorney. This document explicitly acknowledged that he had been advised of his rights under both the United States and the Connecticut constitutions and that he was thereby waiving his right to be tried by a jury and electing to be tried by the court in this case. There is no claim that at any stage of the proceedings he was illiterate or incompetent or incapable of understanding the language used in the writing he signed.

We have noted that insofar as the right to a jury trial is based on the federal constitution, we could appropriately consider the procedure prescribed for an effective jury trial waiver under rule 23 (a) of the federal rules of criminal procedure. *State* v. *Marino,* supra, 644. That rule provides: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." The concern, in requiring under rule 23 (a) that the waiver be in writing, "is to insure a greater probability of a defendant understanding what he is doing, if and when he waives his right to trial by jury." *Pool* v. *United States,* 344 F.2d 943, 945 (9th Cir.), cert. denied, 382 U.S. 832, 86 S. Ct. 73, 15 L. Ed. 2d 76 (1965). The only record of the waiver required by most of the federal courts is the executed document itself. Id. While personal interrogation of the defendant in determining his understanding of the significance of his execution of the waiver is the better practice, *Marino* pointed out that "personal interrogation" is not essential under either the federal constitution or the rule. *State* v. *Marino,* supra.

The issue of whether a constitutionally valid waiver of a jury trial must be supported by a contemporaneous colloquy has also arisen in state courts. "The general view appears to be that there is not such a constitutional requirement, and that, when the validity of a jury waiver is attacked, the necessary proof may be made through facts or occurrences outside the proceeding in which the waiver was formally made and accepted." *Ciummei* v. *Commonwealth,* 378 Mass. 504, 507–508, 392 N.E.2d 1186 (1979), and cases therein cited. "Although we fully recognize the value of the right to trial by jury, we believe that "it is not unreasonable for courts to refrain, in the case of the jury right, from constitutionalizing a particular means of demonstrating the legality of the waiver [of that right]." *Ciummei* v. *Commonwealth,* supra, 508; We therefore conclude that the defendant validly waived his constitutional right to a jury trial under all the circumstances.[18]

This conclusion applies not only to the original information which was in one count but to the substitute information in two counts to which he pleaded not guilty on September 17, 1981. What occurred in open court on that date cannot be considered in a vacuum. While it undoubtedly would have been the better practice and eminently more preferable had the trial court addressed the defendant directly to determine his understanding of his earlier change of election in view of the two count substitute information to which he was pleading, we find a valid jury trial waiver on the substitute information. In doing so, we keep in mind that whether there has been an "intelligent" waiver depends upon the facts and circumstances of each case "includ-

---

[18] We do so despite the defendant's claim of ineffective assistance, the validity of which is better determined in another proceeding. *State* v. *Leecan,* 198 Conn. 517, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).

ing the background, experience, and conduct of the accused." *Naples* v. *United States,* 307 F.2d 618, 625 (D.C. Cir. 1962), quoting *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Additionally, as in *State* v. *Marino,* supra, 646, where we emphasized the limited nature of our holding, our concern here is only with the adequacy of what is properly before us to show a jury trial waiver "when its effectiveness is first questioned on appeal without the benefit of a factual exploration of that issue at some evidentiary proceeding."

It is important to remember that defendant's counsel, after the defendant's plea to the substitute information, told the trial court that, consistent with the election filed earlier, "we" elect a trial to the court. This earlier election had been signed by the defendant and was markedly explicit. While the defendant did not personally announce his continued desire for a court trial, in this case we determine that his failure to protest, when and after his counsel informed the court that "we" persist in the court trial election, must be taken to reflect his knowing acquiescence in that position. See *State* v. *Jelks,* 105 Ariz. 175, 461 P.2d 473 (1969), cert. denied, 398 U.S. 966, 90 S. Ct. 2179, 26 L. Ed. 2d 549 (1970); *State* v. *Watson,* 19 Ariz. App. 369, 507 P.2d 981 (1973); *Leasure* v. *State,* 254 Ark. 961, 497 S.W.2d 1 (1973); *State* v. *Olivera,* 53 Hawaii 551, 497 P.2d 1360 (1972); *State* v. *Long,* 408 So. 2d 1221 (La. 1982); see also *State* v. *Swain,* 61 Hawaii 173, 599 P.2d 282 (1979). This is not a case of a silent record. The record here, unlike those in other cases, has more than a bare "election" by counsel of a court trial. As we have demonstrated, the record discloses that the defendant was advised of his constitutional rights, that he personally signed a waiver of a jury trial, and that he ratified or acquiesced in that waiver after pleading to the substitute information. As in *State* v. *Marino,* supra, "[t]here

is nothing before us to indicate that the defendant was not of ordinary intelligence and educational background and that the choice of court [reflected by his conduct] was not fully discussed with him by his counsel." We cannot assume, despite wholly conclusory claims of ineffective assistance of counsel, that his counsel did not advise him of the consequences not only of his change of election when originally filed but also of his persistance in such an election. See generally id. Our careful review of the court file, which includes a number of motions filed by defense counsel, the transcripts of pretrial motion hearings and the trial itself, serves to convince us that the defects claimed on the waiver issue do not vitiate the fundamental fairness of the proceedings below so as to justify the drastic sanction of setting aside the convictions entered in this case. On the basis of our review of the proceedings in this case, we conclude that the constitutional requirement for an affirmative disclosure of an effective jury waiver was satisfied.

There is no error.

In this opinion the other justices concurred.