## STATE OF CONNECTICUT *v.* DONESQUE CHARLES REYNOLDS
## (AC 30776)

Gruendel, Flynn and Pellegrino, Js.

Argued September 20, 2010—officially released February 1, 2011

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anthony Spinella*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Donesque Charles Reynolds, appeals from the judgment of conviction, rendered after a plea of guilty to the part B information, of being a persistent serious felony offender subject to enhanced penalties under General Statutes § 53a-40 (c). The underlying conviction,[1] rendered after a jury trial and subject to the enhanced penalties includes conspiracy to commit identity theft in the third degree in violation of General Statutes §§ 53a-48 and 53a-129d,[2] and conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 and 53a-124 (a) (2).[3]

The defendant represented himself at trial with the assistance of standby counsel but in this appeal was represented by counsel. The defendant raises the following claims on appeal: (1) his sixth amendment right

[1] The defendant has neither appealed nor briefed on appeal any challenge to the underlying conviction of conspiracy to commit identity theft and conspiracy to commit larceny.

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

General Statutes § 53a-129d provides: "(a) A person is guilty of identity theft in the third degree when such person commits identity theft, as defined in section 53a-129a.

"(b) Identity theft in the third degree is a class D felony."

Pursuant to General Statutes § 53a-35a (8), the sentence of imprisonment for a class D felony is ordinarily a term of from one to five years.

[3] General Statutes § 53a-124 provides in relevant part: "(a) A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds one thousand dollars . . . .

"(c) Larceny in the third degree is a class D felony."

to a jury trial was violated because he did not knowingly, intelligently and voluntarily waive his right to a jury determination that an extended period of incarceration was in the public interest under General Statutes (Rev. to 2007) § 53a-40 (j),[4] (2) the trial court abused its discretion in denying the defendant's motion to withdraw his guilty plea before the enhanced sentences were imposed, and (3) the court, after accepting the defendant's guilty plea to the part B information, failed to make the requisite statutory finding that extended incarceration was in the public interest pursuant to § 53a-40 (j).

We conclude that the defendant's guilty plea on the persistent serious felony offender charge set forth in part B of the information necessarily and validly waived his right to a jury determination as to both his guilt under part B of the information and the public interest determination. We also conclude that the court did not abuse its discretion in denying the defendant's motion to withdraw his plea. We further conclude, however, that the court did not continue to make the then requisite statutory finding that extended incarceration is in the public interest. Accordingly, we vacate the part B sentence enhancement imposed and remand this case for further proceedings with direction to the trial court as fact finder to make the finding as to whether extended incarceration is in the public interest pursuant to § 53a-40 (j).

The jury reasonably could have found the following facts. On or about August 23, 2007, someone initiated, by telephone, a loan application with American General Finance, a bank branch located in Manchester. The requested amount of the loan was $4000. In order to initiate a loan with the bank over the telephone, the applicant was required to give his name, date of birth,

---

[4] All citations to § 53a-40 (j) in this opinion refer to General Statutes (Rev. to 2007) § 53a-40 (j) unless otherwise noted.

social security number, a five year employment history, income, and a five year address history. The caller provided the name Jay Turoff, gave his address as 12 Willard Street in Hartford, listed his employment as retired, and provided a telephone number, social security number, and birth date. Upon investigation, the bank teller determined that there was a fraud alert attached to Turoff's name and personal information and called the telephone number listed in the credit report to confirm the validity of the transaction. During the call, the bank teller confirmed that Turoff had not applied for a loan and then called the Manchester police department. Detective Scott McGill of the Manchester police department received the call and established a surveillance operation designed to apprehend the suspects when they appeared at the bank to claim the loan amount. The bank teller proceeded with the normal loan procedures and scheduled an appointment for closing the loan.

A few days later, on August 25, 2007, the defendant, and a male and a female associate traveled into Hartford, where they obtained a fake identification card bearing the name Jay Turoff, Turoff's date of birth, and the male associate's photograph. Thereafter, the defendant and the two other people drove to the American General Finance branch in Manchester. The defendant and the male associate entered the bank, and the male associate identified himself to the bank teller as Jay Turoff, and identified the defendant as his nephew. The bank teller discussed the application forms while one of his assistants called the police. The police arrived at the bank shortly thereafter and arrested the defendant and the two other people.

On October 3, 2008, the defendant elected to proceed pro se.[5] On October 9, 2008, the state charged the defendant with conspiracy to commit identity theft in the

---

[5] Ultimately, attorney Kirstin B. Coffin served as the defendant's standby counsel during trial and during his pleas on the part B information while the defendant continued to represent himself pro se.

third degree in violation of §§ 53a-48 and 53a-129d, and conspiracy to commit larceny in the third degree in violation of §§ 53a-48 and 53a-124 (a) (2). On the same day, the state filed a substitute part B information charging the defendant with being a persistent serious felony offender as provided in § 53a-40 (c).[6] The defendant, on the larceny and identity theft charges, represented himself, assisted by standby counsel, at a jury trial in Manchester Superior Court before the court, *Bright, J.*

On November 14, 2008, the jury found the defendant guilty on each count, and the court rendered judgment in accordance with the verdict. Following the verdict, after consulting with his standby counsel, the defendant pleaded guilty to the part B information charging him as a persistent serious felony offender under § 53a-40 (c). On December 2, 2008, the defendant filed a motion for plea withdrawal pursuant to Practice Book § 39-27 and stated that the "plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . . ." On January 15, 2009, the court, *Bright, J.*, denied the defendant's motion for plea withdrawal and sentenced the defendant pursuant to § 53a-40 (j) to a total effective sentence of twelve years imprisonment followed by four years special parole.[7] This appeal followed. Additional facts will be set forth where necessary.

---

[6] General Statutes § 53a-40 (c) provides: "A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. This subsection shall not apply where the present conviction is for a crime enumerated in subdivision (1) of subsection (a) of this section and the prior conviction was for a crime other than those enumerated in subsection (a) of this section."

[7] The sentence was structured as follows: six years imprisonment plus two years special parole for each charge, to be served consecutively, for a total effective sentence of twelve years imprisonment and four years special parole. The effect of the sentence enhancement was to increase the sentence on each charge by one year.

"The voluntariness of [a guilty] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady* v. *United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). "The United States Supreme Court has held that for the acceptance of a guilty plea to comport with due process, the plea must be voluntarily and knowingly entered. *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). *Boykin* set forth three federal constitutional rights of which a defendant must be cognizant prior to entering a guilty plea: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's own accusers." (Internal quotation marks omitted.) *State* v. *Moye*, 119 Conn. App. 143, 163, 986 A.2d 1134, cert. denied, 297 Conn. 907, 995 A.2d 638 (2010). "Moreover, [t]he constitutional stricture that a plea of guilty must be made knowingly and voluntarily . . . requires . . . that there be a voluntary waiver during a plea canvass of the right to a jury trial, the right of confrontation and the right against self-incrimination . . . ." (Internal quotation marks omitted.) Id., 164.

## I

The defendant first claims that his sixth amendment[8] right to a trial by jury was violated because he did not knowingly, intelligently and voluntarily waive his right to a jury determination that an extended period of incarceration was in the public interest under § 53a-40 (j).[9]

---

[8] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

[9] The statute in effect at the time of the crime was § 53a-40 (j), which provided: "When any person has been found to be a persistent serious felony offender, and the court is of the opinion that such person's history and character and the nature and circumstances of such person's criminal conduct indicate that extended incarceration will best serve the public interest, the court in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, may impose the

Specifically, the defendant argues that, according to *State* v. *Bell*, 283 Conn. 748, 931 A.2d 198 (2007), and *State* v. *Gore*, 288 Conn. 770, 955 A.2d 1 (2008), he is entitled to a new trial on the part B information and that we should remand the case for further proceedings on the part B information with direction to permit the defendant to withdraw his guilty plea and to elect a jury trial on the part B information because the record contains no indication from the defendant personally that he waived his fundamental right to a jury trial. The state now contends in response that the defendant waived his right to a jury trial pursuant to the principles set forth in a recent Connecticut Supreme Court case, *State* v. *Michael A.*, 297 Conn. 808, 1 A.3d 46 (2010).

As an initial matter, we note that the defendant seeks to prevail on this unpreserved constitutional claim pursuant to the requirements set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In his motion to withdraw his plea that he made to the trial court, he claimed only lack of knowledge of the charge and that the sentence actually imposed could be imposed. The state concedes, and we agree, that under the particular facts and posture of this case, the defendant's claim satisfies each of *Golding*'s two prongs relating to reviewability. It does so because the record is adequate for review and a claim alleging a violation of *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), is of constitutional magnitude alleging a violation of a fundamental right. See *State* v. *Ray*, 290 Conn. 602, 618, 966 A.2d 148 (2009).

To determine whether the defendant knowingly, voluntarily and intelligently waived his right to a jury trial

sentence of imprisonment authorized by said section for the next more serious degree of felony." This subsection was amended by No. 08-1 of the 2008 Public Acts to eliminate the public interest finding. See Public Acts, Spec. Sess., January, 2008, No. 08-1, § 7.

on the public interest determination, we must specifically address the following questions: (1) whether the defendant, as part of his November 14, 2008 guilty plea and hearing with respect to part B of the information, knowingly, voluntarily and intelligently waived a jury trial on the public interest determination; and, if so, (2) whether the defendant was entitled to a judicial fact-finding or personal acknowledgement that he met the "character and history" requirement then set forth in § 53a-40 (j).

## A

To answer the first question, we begin with a brief review of the persistent felony offender statutes and the relevant case law that informs our decision.

In *State* v. *Bell*, supra, 283 Conn. 785–813, our Supreme Court concluded that the persistent felony offender statutes violate the principles of *Apprendi* v. *New Jersey*, supra, 530 U.S. 466. Specifically, the court in *Bell* concluded that "[the 2007 revision of General Statutes] § 53a-40 (h) is unconstitutional, to the extent that it does not provide that a defendant is entitled to have the jury make a required finding [that] expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict . . . ." (Internal quotation marks omitted.) *State* v. *Bell*, supra, 810. The United States Supreme Court in *Apprendi* v. *New Jersey*, supra, 490, held that any fact—other than that of a prior conviction—that increases the maximum punishment to which a defendant may be sentenced must be proved beyond a reasonable doubt to a jury. Subsequently, in *Blakely* v. *Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), the United States Supreme Court held that in order to comport with the sixth amendment, the government must submit to a jury and prove beyond a reasonable doubt any fact necessary to enhance a sentence beyond a statutory subrange. To

cure the constitutional defect and *Apprendi* violation contained within General Statutes (Rev. to 2007) § 53a-40 (h), our Supreme Court made the public interest determination a necessary element to be determined beyond a reasonable doubt by the jury, rather than the court.[10] *State* v. *Bell*, supra, 812.

The court in *Bell* concluded that "the language and history of the statute support the conclusion that § 53a-40 (h) requires two factual predicates before an enhanced sentence may be imposed—a jury determination that the defendant meets the definition of a persistent offender by virtue of his prior convictions, and a trial court determination that extended incarceration will best serve the public interest, given the defendant's history and character and the nature of the offenses."[11] Id., 803–804. The court reasoned that "this court previously has interpreted § 53a-40 [in *State* v. *Velasco*, 253 Conn. 210, 218, 751 A.2d 800 (2000), a case decided pre-*Apprendi*] as prescribing two factual predicates to imposition of the enhanced sentence." *State* v. *Bell*, supra, 800.[12] In sum, the court may not impose an

---

[10] The court in *Bell* specifically addressed General Statutes (Rev. to 2007) § 53a-40 (h). Its precedent is applicable here because the language of § 53a-40 (j), as applicable to this case, tracks the same language and employs the same scheme as § 53a-40 (h).

[11] It is worth noting that subsection (h) of § 53a-40, the statute in *Bell*, provides that the court "shall impose" an enhanced sentence, leaving no discretion to the court. Subsection (j), the subsection in the present case, provides that upon making the public interest determination, the court "may impose" the enhanced sentence, conferring full discretion on the court. This distinction, however, is immaterial to the determination that § 53a-40 requires two factual predicates before an enhanced sentence is imposed. See footnote 10 of this opinion. The legislative history of § 53a-40 also supports the conclusion that the public interest determination is, as stated in *State* v. *Velasco*, 253 Conn. 210, 228, 751 A.2d 800 (2000), an ultimate factual predicate to the imposition of an enhanced sentence. See *State* v. *Bell*, supra, 283 Conn. 802–803.

[12] In interpreting *Velasco*, the court in *Bell* concluded that "the prior conviction appears to be the triggering fact in the same sense that our death penalty scheme provides that certain facts make an offense death penalty eligible; see General Statutes § 53a-54b (enumerating capital felonies); and

extended sentence unless both factual predicates are satisfied. Id., 801.

After the Supreme Court's 2007 decision in *Bell*, the General Assembly accordingly amended § 53a-40, effective January 25, 2008, to eliminate the public interest finding altogether. See Public Acts, Spec. Sess., January, 2008, No. 08-1, § 7. Section 53a-40 (c) remained unchanged; however, the amended version of subsection (j) now provides: "When any person has been found to be a persistent serious felony offender, the court in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony." General Statutes § 53a-40 (j).

We now specifically address the first question of whether the defendant, as part of his November 14, 2008 guilty plea and hearing with respect to part B of the information, knowingly, voluntarily and intelligently waived his right to a jury trial. The defendant claims that the trial court's canvass does not accord with the standards set forth in *State* v. *Gore*, supra, 288 Conn. 788–89, for a knowing, voluntary and intelligent waiver of the right to a jury trial. Specifically, the defendant argues that the trial court never informed the defendant of the right to a jury trial on the public interest determination during the plea canvass or sentencing and, on that basis, it cannot be presumed that he validly waived that right. We disagree.

---

then requires that an additional fact—an aggravating fact—be found by the jury beyond a reasonable doubt before the death penalty actually may be imposed. General Statutes § 53a-46a (f) and (i)." *State* v. *Bell*, supra, 283 Conn. 801.

We begin by setting forth the background of *Gore* and the standards set forth therein to establish an adequate waiver. "The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . [A] valid waiver of a constitutional right [is] the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case." (Citation omitted; internal quotation marks omitted.) Id., 775–76. We therefore must determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial based on "the facts and circumstances [surrounding the defendant's] case including the background, experience, and conduct of the accused." (Internal quotation marks omitted.) *State* v. *Crump*, 201 Conn. 489, 503–504, 518 A.2d 378 (1986); *State* v. *Shockley*, 188 Conn. 697, 707, 453 A.2d 441 (1982).

In determining such a waiver, "in the absence of a written waiver, the trial court must canvass the defendant briefly to ensure that his or her personal waiver of a jury trial is made knowingly, intelligently and voluntarily." *State* v. *Gore*, supra, 288 Conn. 786–87. The trial court's canvass must be sufficient to obtain assurance that the defendant "(1) understands that he . . . personally has the right to a jury trial; (2) understands that he . . . possesses the authority to give up or waive the right to a jury trial; and (3) voluntarily has chosen to waive the right to a jury trial and to elect a court trial." Id., 789. "[I]n the absence of a written waiver, the trial court must canvass the defendant *briefly* to ensure that

his or her personal waiver of a jury trial is made knowingly, intelligently and voluntarily." (Emphasis added.) Id., 786–87.

The defendant argues that he did not understand the nature of the charges because the defendant believed that he was a persistent larceny offender, not a persistent serious felony offender, and that his older convictions, less serious than manslaughter or robbery, could not be used against him. We are not persuaded.

Here, the defendant pleaded guilty pursuant to an information that explicitly listed § 53a-40 (c) as the governing statute. He pleaded guilty on two counts in direct response to being asked for his pleas on the charge of being a "persistent serious felony offender." At the plea canvass, the defendant responded in the affirmative when the trial court asked if he understood the nature of the state's burden in establishing that he was a persistent serious felony offender; that he could be sentenced as though his crimes were class C felonies, rather than class D felonies; and that his total exposure was up to twenty years in prison. Furthermore, the defendant previously had been canvassed by the court on his waiver of the right to counsel, when he chose to proceed pro se on the specific charges in the part B information, namely, violation of § 53a-40 (c). During that canvass the court informed the defendant how those charges could enhance his sentences, for example, from class C felony to class B felony liability and increase his total exposure to twenty years imprisonment on each one of the charges.[13] There is no finding or allegation that

[13] We note that in the canvass concerning the defendant's waiver of his right to counsel the court erroneously stated that the part B information would enhance his sentences from C felony to B felony liability. The maximum penalty for a B felony is twenty years and, since there were two enhancements, the maximum exposure would have been forty years. The court's error in reference to the enhancement to B felony liability is not harmful because the enhancements are both felonies, not misdemeanors or some lesser type of infraction, and the court correctly computed his maximum exposure at twenty years. The defendant has not raised this as an appellate issue.

the canvass of the defendant's waiver of a right to counsel was in any way inadequate. This record evidences the defendant's full awareness of the nature of the charges, including the underlying larceny and identity theft as well as the enhancements sought for each.

Furthermore, there is nothing before us to indicate that the defendant was not of ordinary intelligence and educational background. The defendant previously represented himself in a civil matter and demonstrated familiarity with statutes, and the defendant stated that he knew the elements of the crimes for which he was charged. The defendant has experience with the criminal justice system. The prosecutor represented at sentencing on the part B information that the defendant had thirty convictions, ranging from car theft and possession of firearms to armed robbery and many violations of probation. The defendant said that he understood the nature of what the state would have to prove and what evidence it would have to present against him. The defendant waived a jury trial on some of these prior convictions, thus, evidencing his knowledge of what waiver encompassed. The defendant acknowledged that, by pleading guilty to being a persistent serious felony offender, he was subjecting himself to an enhanced sentence of an additional ten years of imprisonment on each of the underlying charges.

The court permitted the defendant to consult with standby counsel at the hearing on the motion to withdraw the plea. The defendant argues that standby counsel's advice was not enough to amplify the record for constitutional waiver purposes. At the sentencing hearing, the defendant's standby counsel, attorney Kirstin B. Coffin, admitted that she could not specifically recall the conversation she had had with the defendant. At the sentencing hearing, attorney Coffin proceeded to state, however, that she did briefly discuss the defendant's options related to the part B information before

he elected to plead guilty. Despite stating that she could not specifically recall the canvass, she still affirmed that she had discussed the defendant's options with him. It can be presumed that standby counsel reviewed the elements necessary to enhance the defendant's sentence with the defendant. See *State* v. *Gaston*, 86 Conn. App. 218, 860 A.2d 1253 (2004) (proper for court to presume standby counsel had informed defendant as to elements of crime). The defendant has not rebutted this presumption by offering evidence that standby counsel could not later remember the content of her advice. We acknowledge that "the role of standby counsel is essentially to be present with the defendant in court and to supply the limited assistance provided for in Practice Book § 44-5 . . . ." (Internal quotation marks omitted.) *State* v. *Miller*, 69 Conn. App. 597, 613, 795 A.2d 611, cert. denied, 260 Conn. 939, 802 A.2d 91 (2002). Practice Book § 44-5 defines the limited role of standby counsel in relevant part: "If requested to do so by the defendant, the standby counsel shall advise the defendant as to legal and procedural matters. . . ." We conclude from the record that the defendant understood the consequences of his plea.

The defendant also argues that the trial court's canvass did not accord with the standards set forth in *Gore* essentially because the record of the canvass of him by the court mentioned only the required prior convictions and incarceration but did not mention that the jury would also have to pass on whether the enhancement was in the public interest. The court in *Gore* followed the holding of *Boykin* v. *Alabama*, supra, 395 U.S. 243, that "a waiver of a fundamental constitutional right is not to be presumed from a silent record."[14] (Internal quotation marks omitted.) *State* v. *Gore*, supra, 288

---

[14] Further, the court in *Gore* reasoned that "the defendant's silence [was] too ambiguous to permit the inference that he . . . waived such a fundamental right." *State* v. *Gore*, supra, 288 Conn. 782.

Conn. 777. *Gore* makes clear that even "[i]f the record contained an affirmative indication from the defendant personally that he had decided to waive his right to a jury trial, we would engage in a third level of inquiry to determine whether that waiver was made knowingly, intelligently and voluntarily."[15] Id., 778 n.8. The requirement of a colloquy on the record "serves three purposes: [1] it more effectively insures voluntary, knowing and intelligent waivers; [2] it promotes judicial economy by avoiding challenges to the validity of waivers on appeal . . . and [3] it emphasizes to the defendant the seriousness of the decision . . . ." (Citation omitted; internal quotation marks omitted.) Id., 787.

The circumstances of the present case do not present a "silent record" and constitute more than a bare waiver of a jury trial. When the court canvassed the defendant on his pleas, the following colloquy ensued:

"The Court: . . . Have you had any alcohol, medicine or drugs today, or anything that would affect your ability to understand what you were doing?

"[The Defendant]: No, sir.

"The Court: Now, you're representing yourself in this matter, and is it your desire to continue to represent yourself in connection with the part B information?

"[The Defendant]: You mean for—

"The Court: For this purpose.

"[The Defendant]: For this purpose?

"The Court: Yes.

---

[15] Importantly, "[a] defendant's personal assertion of a waiver of the right to a jury trial is not conclusive evidence that the waiver was made knowingly, intelligently and voluntarily, but its absence is a fatal blow to the validity of a waiver." *State* v. *Gore*, supra, 288 Conn. 782; see also *State* v. *Crump*, supra, 201 Conn. 497–505.

"[The Defendant]: Yes, I'll continue to represent myself.

"The Court: And Ms. Coffin is here as standby counsel, and you've had an opportunity to consult with her in that role as standby counsel. Are you satisfied with that consultation?

"[The Defendant]: Yes, I am, sir.

"The Court: *All right, and do you understand the nature of what the state would have to prove to convict you of being a serious—a persistent serious felony offender and what evidence it has to present against you?*

"[The Defendant]: *Yes, sir.*

"The Court: All right. I want to go over with you the rights you're giving up by pleading guilty to being a persistent serious felony offender on these two counts. You're giving up your right to a court or jury trial; your right to remain silent; your right to continue to plead [not] guilty and make the state prove these charges beyond a reasonable doubt. You're giving up your right to have your attorney or yourself ask questions of the witnesses presented against you or the evidence presented against you; your right to present your own evidence, including testifying yourself if you wanted to; and your right to present any kind of defense of the charges of being a persistent serious felony offender. Do you understand that by pleading guilty to these charges, you're giving up all of those rights?

"[The Defendant]: Yes, I do." (Emphasis added.)

For all of the foregoing reasons, we conclude that the trial court's plea canvass meets the standards set forth in *Gore* for a knowing, intelligent and voluntary waiver. The defendant himself directly affirmed to the court that he understood the nature of what the state

would have to prove to convict him of being a persistent serious felony offender.

We next address the defendant's argument that the trial court never informed him of the right to a jury trial on the public interest determination during the plea canvass or sentencing, and, on that basis, it cannot be presumed that he validly waived that right. A recent case decided by our Supreme Court, *State* v. *Michael A.*, supra, 297 Conn. 808, informs us of the effect of a guilty plea on the scope of the defendant's entitlement to a jury determination under the persistent serious felony offender statute and, thus, affects the application of *Bell* to the present case. In *Michael A.*, the court concluded that the defendant had waived his right to a jury trial on the public interest factor on the basis of his nolo contendere plea with respect to part B of the information and the subsequent canvass conducted by the court. *State* v. *Michael A.*, supra, 820–21. The court concluded that the nolo contendere plea, and the waiver of rights that accompanied it, necessarily encompassed the public interest factor. Id., 821. The court reasoned that "the persistent felony offender statute is a sentence enhancement provision, and not an independent criminal offense . . . ." (Internal quotation marks omitted.) Id. The court relied on *State* v. *Velasco*, supra, 253 Conn. 224, in its reasoning, stating that "in pleading guilty to a persistent offender charge, the accused waives several constitutional rights, including the right to a jury determination of ultimate facts that trigger the enhanced sentence . . . ." (Internal quotation marks omitted.) *State* v. *Michael A.*, supra, 821. The plea of guilty in the present case, accordingly, has the same effect as the plea of nolo contendere, and, thus, we conclude that the defendant's guilty plea necessarily encompassed a waiver of the right to a jury trial on the public interest factor.

The court's conclusion in *Michael A.* is consistent with its decision in *Bell*, with respect to the requirement in *Bell* of two separate factual prerequisite findings before imposition of an enhanced sentence. *State* v. *Bell*, supra, 283 Conn. 800. *Bell* is distinguishable from *Michael A.*, however, in that the defendant in *Bell* did not submit a guilty plea or nolo contendere plea but was found guilty by a jury on part B of the information and, therefore, was not canvassed to determine whether he was waiving his right to a jury trial on the public interest determination.[16] Indeed, the court in *Michael A.* "recognized that distinction and emphasized that, in those cases in which the defendant chooses to waive his right to a jury trial under § 53a-40, the court may continue to make the requisite finding." (Internal quotation marks omitted.) *State* v. *Michael A.*, supra, 297 Conn. 824. Under the defendant's nolo contendere plea in *Michael A.*, therefore, he waived his right to a jury trial, not only with respect to the factual predicate of whether he was a persistent serious felony offender but also with respect to the issue of whether his extended incarceration was in the public interest. Id., 821.

Certain facts which occurred from the time of briefing to the time of oral argument are pertinent here. In its brief, the state first conceded that the defendant's waiver of his right to a jury trial on the persistent offender charge was defective and that standby counsel was inadequate. However, at oral argument the state narrowed the concession as a result of the subsequent decision of our Supreme Court in *Michael A.* and now contends that under the language in *Michael A.*, the defendant validly waived his right to a jury trial on the public interest determination. The state now concedes

---

[16] The defendant's claim in *Bell* was that the court, rather than the jury that had found him to be a persistent dangerous felony offender, improperly had made the finding that extended incarceration would be in the public interest. *State* v. *Bell*, supra, 283 Conn. 752–53.

only that there is an absence of a finding by the trial court or an acknowledgement by the defendant that prolonged incarceration would serve the public interest. In response, the defendant concedes that the court advised the defendant of the maximum penalty when he pleaded guilty to the persistent serious felony offender charge, but argues that the court did not indicate that any additional findings on the public interest factor would be necessary, by the jury or the court, if the jury trial was waived. The defendant specifically argues that *Michael A.* is distinguishable from the present case and does not control the outcome of this case. We disagree.

In *Michael A.*, as in the present case, the defendant was not specifically notified in the plea canvass of his right to a jury determination on whether it was in the public interest to enhance his sentence. In *Michael A.*, "the defendant, through the trial court's thorough canvass, acknowledged his understanding of the consequences of his plea—namely, exposure to extended incarceration—and, thus 'received real notice of the true nature of the charge against him . . . .' " Id., 825. The court in *Michael A.* determined that "the defendant's uncontested understanding of the consequences of his plea overcame the absence of specific disclosure of the defendant's particular right to a jury trial on the public interest determination." Id., 825–26. Under this precise provision in *Michael A.*, the trial court's recitation in the present case of the elements of the crime and the court's canvass of the defendant about the consequences of his plea with respect to the part B information were sufficient and did provide the defendant with notice of the true nature of the crimes and the potential for an enhanced sentence of twenty years imprisonment.

Both *Michael A.* and the present case involve the persistent offender statutes, which are part of the same

statutory scheme.[17] Neither defendant was specifically notified of his right to a jury determination on the public interest factor. Accordingly, the defendant's plea of guilty operates as a waiver of his right to a jury trial, not only with respect to the factual predicate of whether he was a persistent serious felony offender but also with respect to the issue of whether his extended incarceration was in the public interest. See id., 821.

We conclude, therefore, that the defendant's sixth amendment right to a jury trial was not violated because his guilty plea on part B of the information resulted in a waiver of that right, including a jury determination as to whether an extended period of incarceration was in the public interest under § 53a-40 (j). The defendant has failed to carry his burden of showing under *State* v. *Golding*, supra, 213 Conn. 239–40, that a constitutional violation clearly exists and deprived the defendant of a fair trial.

B

Having determined that the defendant knowingly, voluntarily, and intelligently waived his right to a jury trial on the public interest determination, we now turn to our second question of whether the defendant was entitled to a judicial fact-finding or personal acknowledgement that he meets the "character and history" requirement set forth in § 53a-40 (j) before a sentence enhancement could be imposed. The defendant claims that the trial court failed to make such a finding. We conclude that the defendant was entitled to such a finding and agree with the defendant that the court failed to make such requisite finding.

After a proper waiver of a right to a jury trial under § 53a-40 the court may make the requisite finding. *State* v. *Bell*, supra, 283 Conn. 812. Specifically, the court in

---

[17] See footnote 10 of this opinion.

*Bell* held that "in those cases in which the defendant chooses to waive his right to a jury trial under § 53a-40, the court may continue to make the requisite finding." Id. Additionally, the court properly may "impose an enhanced sentence if the defendant admits to the fact that extended incarceration is in the public interest." Id. For example, in *Michael A.*, it was undisputed that the trial court, and not a jury, made the public interest determination at the sentencing hearings. *State* v. *Michael A.*, 297 Conn. 820. In the present case, the defendant argues that the court only alluded to the factual issue of whether the defendant had the requisite prior conviction and period of incarceration to be considered a persistent serious felony offender. The state concedes that this requisite finding did not take place. We agree. After the defendant made his guilty plea to the charge of being a persistent serious felony offender, the trial court did not make such a finding, nor did the defendant stipulate or acknowledge that extended incarceration is in the public interest, as required by *Bell*. Therefore, the case is remanded for further proceedings with direction for the trial court to make the appropriate finding whether or not extended incarceration is in the public interest or for the defendant to make the appropriate acknowledgement that extended incarceration is in the public interest.

## II

The defendant also claims that the court abused its discretion in denying the pro se defendant's motion to withdraw his guilty plea before the enhanced sentences were imposed. We disagree.

As a preliminary matter, we identify the legal principles and the standard of review relevant to our discussion. "Practice Book § [39-27] specifies circumstances under which a defendant may withdraw a guilty plea after it has been entered. [O]nce entered, a guilty plea

cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty." (Internal quotation marks omitted.) *State* v. *Siminausky*, 112 Conn. App. 33, 35–36, 961 A.2d 1005, cert. denied, 290 Conn. 918, 966 A.2d 234 (2009).

"The court is required to permit the withdrawal of a guilty plea upon proof of any ground set forth in Practice Book § [39-27] . . . [but] [w]hether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused." (Internal quotation marks omitted.) *State* v. *Winer*, 69 Conn. App. 738, 744, 796 A.2d 491, cert. denied, 261 Conn. 909, 806 A.2d 50 (2002). Practice Book § 39-26 states in relevant part, that "[a]fter acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in [s]ection 39-27 . . . ." Practice Book § 39-27 lists the grounds for permitting the withdrawal of a guilty plea, including: "The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed . . . ." Practice Book § 39-27 (2).

A review of the transcript reveals that the defendant was canvassed thoroughly before the court accepted his guilty plea to the part B information on November 14, 2008. "A court is permitted to rely on a defendant's responses during a plea canvass." *State* v. *Hanson*, 117 Conn. App. 436, 449, 979 A.2d 576 (2009), cert. denied, 295 Conn. 907, 989 A.2d 604 (2010). For the same reasons supporting our conclusion that the trial court's plea canvass meets the standards set forth in *Gore*, we conclude that the plea was voluntary and entered with

knowledge of the charges and with knowledge that the sentences actually imposed could be imposed.[18]

We agree with the defendant that the trial court failed to make an explicit finding that an extended period of incarceration would be in the public interest, as required by § 53a-40 (j). Under *Michael A.*, however, it does not affect the voluntariness of the plea or provide grounds for withdrawal because "the defendant's uncontested understanding of the consequences of his plea overcame the absence of specific disclosure of the defendant's particular right to a jury trial on the public interest determination." *State* v. *Michael A.*, supra, 297 Conn. 825–26.

We conclude that the trial court properly found that the defendant knew the charges against him at the time he pleaded guilty and did not abuse its discretion when it denied his motion to withdraw his pleas.

The judgment on the part B information only is reversed and vacated and the case is remanded for further proceedings with direction to the trial court as fact finder to make the finding whether extended incarceration is in the public interest or for the defendant to make the appropriate acknowledgement and, depending on that finding or acknowledgement, to determine whether an enhanced sentence is appropriate.

In this opinion the other judges concurred.

---

[18] See part I A of this opinion.