STATE OF CONNECTICUT *v.* REINA HEYLIGER
(AC 29620)

Beach, Robinson and West, Js.

Argued January 20—officially released May 5, 2009

*Bradford Buchta*, deputy assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence D. Mariani*, senior assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Reina Heyliger, appeals from the judgment of conviction, rendered by the trial court, after she entered guilty pleas under the *Alford* doctrine[1] to conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2)[2] and larceny in the first degree in violation of General

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight

Statutes § 53a-122.[3] The issue in this appeal is whether, at the time she entered her plea, the defendant was apprised adequately of the nature of the criminal charges against her consistent with the federal constitutional requirement that a guilty plea, to be valid, must be made knowingly and voluntarily. We conclude that she was not and, accordingly, reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The charges the defendant faced were the result of an incident that took place on August 20, 2004, in Waterbury. Police were dispatched to Fleet Bank on Fairfield Avenue on a report of a robbery that had taken place. Witnesses reported that a man, later identified as Dale Hylton, had entered the bank wearing women's clothing and a wig. He then grabbed a teller and held her at knifepoint. He ordered the other tellers to empty their cash drawers into a bag and absconded with approximately $15,000 in cash. When Hylton left the bank, witnesses observed him get into a Mercury Mountaineer vehicle with New York license plates. Police soon located and stopped the vehicle. The defendant was driving, and Hylton was in the backseat along

therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

General Statutes § 53a-133 defines robbery as follows: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[3] General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

with the bag of stolen money. He had a knife in his possession. The defendant and Hylton were arrested and taken into police custody. Soon after, the defendant gave the police a written statement admitting her involvement in the robbery. On February 21, 2006, the state, by substitute information, charged the defendant with conspiracy to commit robbery in the first degree and larceny in the first degree. After canvassing the defendant, the court accepted her guilty plea. She was subsequently sentenced to twelve years incarceration, suspended after seven years, followed by five years of probation. This appeal followed.

At the outset, we note that the defendant failed to file a timely motion seeking to withdraw her guilty plea under Practice Book § 39-26.[4] The defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We will review the defendant's claim, as the record is adequate for review, and the alleged violation is of constitutional magnitude. The defendant's claim also satisfies the third prong of *Golding* because we conclude that it is clear from the record that a constitutional violation exists. Finally, the claim satisfies the fourth and final prong of *Golding* because the state has not demonstrated harmlessness of the alleged constitutional violation beyond a reasonable doubt.

"It is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead

---

[4] Practice Book § 39-26 provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed."

guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences. . . . We therefore require the record affirmatively to disclose that the defendant's choice was made intelligently and voluntarily." (Citations omitted.) *State* v. *Childree*, 189 Conn. 114, 119–20, 454 A.2d 1274 (1983). Moreover, "[t]he constitutional stricture that a plea of guilty must be made knowingly and voluntarily . . . requires not only that there be a voluntary waiver during a plea canvass of the right to a jury trial, the right of confrontation and the right against self-incrimination, but also that the defendant must be aware of and have an understanding of all of the elements of the crime or crimes with which he is charged . . . . [T]he plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Hackett*, 16 Conn. App. 601, 602, 548 A.2d 16 (1988).

"Our courts [however] have stopped short of adopting a per se rule that notice of the true nature of the charge always requires the court to give a description of every element of the offense charged. . . . The trial court's failure to explicate an element renders the plea invalid only where the omitted element is a critical one . . . and only where it is not appropriate to presume that defense counsel has explained the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." (Internal quotation

marks omitted.) *State* v. *Barnwell*, 102 Conn. App. 255, 260–61, 925 A.2d 1106 (2007). "Defense counsel generally is presumed to have informed the defendant of the charges against him. [E]ven without an express statement by the court of the elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. . . . [U]nless a record contains some positive suggestion that the defendant's attorney had not informed the defendant of the elements of the crimes to which he was pleading guilty, the normal presumption applies." (Internal quotation marks omitted.) Id., 259–60.

Addressing whether the usual presumption applies, which is that the defendant's attorney explained to her the elements of the crimes to which she pleaded guilty, we take note of the following colloquy that took place between the court and the defendant soon after the state related the facts of the case to the court:

"The Court: Did you discuss with [your attorney] the nature and the elements of the two charges you [pleaded] guilty to that the state would have to prove, and what the maximum and mandatory minimum sentences are?

"[The Defendant]: No, I don't think I heard about what the state had to prove.

"The Court: Well, I'm going to read the statute to you in a minute, but didn't he discuss with you the circumstances of the bank robbery, the—

"[The Defendant]: He discussed my statement, basically.

"The Court:—the confession that you gave.

"[The Defendant]: Yes.

"The Court: And that that would be put in front of a jury and would be part of the evidence used against you to try to prove that you committed the crime beyond a reasonable doubt. Did you discuss that with him?

"[The Defendant]: Yes.

"The Court: So, basically he went through the evidence, the confession.

"[The Defendant]: But there were other circumstances.

"The Court: I understand that, but those other circumstances might not necessarily be elements of the crime. He has to talk to you about what the state would have to prove to show there was a robbery.

"[The Defendant]: Well, that has been proven, because I made the statement.[5]

"The Court: That's kind of the point I'm making.

"[The Defendant]: Right.

"The Court: Okay. So, you discussed that with him.

"[The Defendant]: I was trying to explain that I was under duress.

"The Court: I understand that.

"[The Defendant]: During this whole situation.

[5] The defendant's statement was not made part of the record; however, the state at the plea hearing, without objection from the defendant, portrayed its contents as follows: "Police took [the defendant] into custody, advised her of her [rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)], and she gave a full, written statement wherein she indicated in pertinent part that she was, in fact, a girlfriend to the person who went into the bank [and] that they had discussed on a number of occasions robbing a bank here in Waterbury.

"They had, in fact, come from New York this particular day, August 20, 2004. They looked for a number of banks, drove around various neighborhoods [and] discussed finding a bank in a more quiet location.

"When they eventually found the bank on Fairfield Avenue that they had decided to rob, this defendant, after going into a grocery store, waited in the motor vehicle so that when the defendant—the other defendant, Mr. Hylton, completed the robbery, he fled the bank, drove in, [and] she was the getaway driver."

"The Court: And that would be a defense that you would try to put forward.

"[The Defendant]: Right.

"The Court: But it is not an element of the crime of robbery.

"[The Defendant]: Okay.

"The Court: And I'll read it to you in a second."

We note that the defendant's attorney did not refute the defendant's contention that he failed to inform her of the elements of the crimes to which she was pleading guilty, nor was there any further discussion initiated by the court or the attorneys regarding this matter. We conclude, therefore, that the record contains some positive suggestion that the defendant's attorney had not informed the defendant of the elements of the crimes to which she was pleading guilty. See *State* v. *Lopez*, 269 Conn. 799, 802, 850 A.2d 143 (2004). The state argues, essentially, that despite the previous colloquy and the positive suggestion therein, the record reveals circumstances that support the contention that the presumption applies. The state refers to portions of the record that indicate that the defendant informed the court that she had discussed with her attorney the state's evidence, her confession and the case generally, and that she was satisfied with his advice.[6] We are not persuaded.

---

[6] The state directs our attention to the colloquy quoted previously in this opinion as well as the following discussion between the defendant and the court:

"The Court: All right. Miss Heyliger, have you now had enough time to speak to your lawyer?

"[The Defendant]: Yes, I spoke to him. Yes. . . .

"The Court: All right. Are you satisfied with his advice?

"[The Defendant]: No, I can't say that I am.

"The Court: . . . Is it that you're not satisfied with his advice or you're not happy that you're accepting the seven year sentence?

"[The Defendant]: I'm not happy with the sentence. . . . Well, he gave me [the] advice that he could give, but I'm not happy with what I have to do today. So, yeah, I'm happy—I'm all right with his advice. . . .

"The Court: Okay. So, what you're telling [the court] is [that] you're doing what you ultimately think is in your best interest.

We agree that "the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by [the defendant's] own, competent counsel." (Internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 784, 894 A.2d 963 (2006). Here, however, the record does not accurately reflect such an explanation by the defendant's attorney. In fact, it reflects the contrary in that the defendant stated, in response to the court's question regarding what her attorney had explained to her concerning the charges pending against her: "No, I don't think I heard about what the state had to prove." Moreover, the record reflects that this contention was not refuted by her attorney, nor did the court or the state through the court attempt to elicit from either the defendant or her attorney any statement for the record indicating otherwise. We find this omission in the record compelling to our decision as to whether the usual presumption applies. This is so, in part, because during the portion of the plea canvass in which the court discussed the parameters of the sentences that the defendant was facing, the court not only asked her if she

"[The Defendant]: Yes, ultimately, yes.

"The Court: And you've decided what you think is ultimately based—ultimately is in your best interest based upon your consultation with [defense counsel], the two of you sitting down, and I don't want to know the contents of what you talked about, that's not my business, but whatever it is the two of you talked about, you came out of that discussion believing that entering a guilty plea under the doctrine [of *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970)] was the best thing that you could do under the circumstances.

"[The Defendant]: Yes. . . .

"The Court: Right. So, you're not dissatisfied with his advice, you're just unhappy this whole thing happened and you're here.

"[The Defendant]: Yes. . . .

"The Court: Okay. . . . You think he told you this is what we've got, and this is what could happen, what do you want to do, and based—I'm paraphrasing, you know—and then after whatever discussions you had, the two of you came away from that discussion and said there's no good resolution here. My best benefit is to take the judge's offer and not take the risk of going in front of a jury. I might get convicted.

"[The Defendant]: Uh-huh. . . .

"The Court: So, I'm going to ask you again, based on this little conversation we've had, are you satisfied with the advice he gave you?

"[The Defendant]: Yes."

had discussed those parameters with her attorney, it also corroborated that fact with her attorney. That exchange serves to underscore the court's failure to seek from the defendant's attorney any assurance that he had, in fact, explained to the defendant the elements of the crimes to which she was pleading guilty. We conclude, under the circumstances, that the record does not suggest any facts that would give rise to the presumption that the defendant's attorney informed her of the elements and that, here, the presumption does not apply. We now must address whether the court adequately apprised the defendant of critical elements of the crimes to which she pleaded guilty.

Our review of the record discloses that the defendant was not informed by the court during the plea canvass of the critical elements of the crimes to which she pleaded guilty. Although the court did apprise her adequately of the elements of conspiracy by reading the statutory provision to her; see *State* v. *Barnwell*, supra, 102 Conn. App. 260 (court's reading relevant provisions of statute sufficient to explain elements of crime to defendant); it failed to do the same with the underlying robbery charge or the larceny charge. The court stated repeatedly that it would read to the defendant the statutes defining the crimes to which she pleaded guilty. It did not. What the court did was to read the statutes that defined the elements that elevated the crimes charged to larceny in the first degree and robbery in the first degree, respectively. For example, as for the larceny charge, the court read to the defendant the following: "Larceny in the first degree reads: A person is guilty of larceny in the first degree when he commits larceny and the value of the property or services exceeds $10,000 under subsection two." The court, however, failed to set out the elements of larceny itself. See footnote 3. The same can be said of the charge of robbery in the first degree underlying the conspiracy

charge. The court read to the defendant: "Robbery in the first degree under [subsection] (a) (2)—a person is guilty of robbery in the first degree when in the course of the commission of the crime of robbery or of immediate flight therefrom, he or another participant in a crime is armed with a deadly weapon." Again, however, the court failed to set out the elements of robbery itself. See footnote 2.

In *State* v. *Childree*, supra, 189 Conn. 121, our Supreme Court utilized a "[c]omparison of the trial court's definition of [the charged offense] with the statutory definition of [that] offense" to come to "the conclusion that [an element] essential to a commission of [that offense] was not made clear to the defendant in [that] case." Here, such a comparison results in the same conclusion for both the larceny charge and the robbery charge underlying the conspiracy charge. In *Childree*, the trial court neglected to make clear to the defendant *one* element of a crime to which he was pleading guilty, the threat of future harm element of larceny under General Statutes §§ 53a-119 (5) (A) and 53a-122 (a) (1). Id. Here, the court, in reading only those portions of the statutes that elevated the charges to larceny and robbery in the first degree, left out several elements essential to the commission of those crimes. The state claims that the record, as a whole, reveals that the defendant adequately was apprised by the court of the elements of the crimes to which she pleaded guilty. It makes several arguments in support of this contention.

First, it contends that, typically, a court's reading of the relevant portions of the statutes with which the defendant has been charged suffices to apprise her of the elements of those crimes. Although we do not dispute that this is true, here, the court, as we have concluded, did not read the *relevant* portions of the statutes that set out the elements of the crimes to which the defendant was pleading guilty. Next, the state argues

that the court attempted to explain the elements of the crimes to the defendant and that she indicated that she understood them. We agree that a court is permitted to rely on a defendant's responses during a plea canvass in deciding whether she was informed adequately of elements of charged offenses. See *State* v. *Irala*, 68 Conn. App. 499, 512, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002); see *State* v. *Johnson*, 253 Conn. 1, 40, 751 A.2d 298 (2000), citing *Bowers* v. *Warden*, 19 Conn. App. 440, 443, 562 A.2d 588, cert. denied, 212 Conn. 817, 565 A.2d 534 (1989). Here, however, the defendant indicated that she understood what facts the state was prepared to prove on the basis of her written statement made to the police. We, however "require the record to disclose an act that represents . . . an understanding of the *law in relation to the facts*"; (emphasis added; internal quotation marks omitted) *State* v. *Holmes*, 78 Conn. App. 479, 487–88, 827 A.2d 751, cert. denied, 266 Conn. 909, 832 A.2d 73 (2003); and here the record discloses none. Finally, the state's argument that the factual allegations made at the plea canvass and the fact that the defendant made a written statement each served to put her on notice of the elements of the crimes charged also fails in light of the requirement of an indication on the record of an understanding by the defendant of the law in relation to those facts.

We conclude that the usual presumption that the defendant's attorney adequately apprised her of the elements of the crimes to which she was pleading does not apply and that the court failed to set out the essential elements of those crimes. We, therefore, also conclude that at the time she entered her plea, the defendant was not apprised adequately of the nature of the criminal charges against her consistent with the federal constitutional requirement that a guilty plea, to be valid, must be made knowingly and voluntarily.

The judgment is reversed and the case is remanded with direction to allow the defendant to withdraw her guilty pleas and for further proceedings in accordance with law.

In this opinion the other judges concurred.