STATE OF CONNECTICUT
*v.* CHRISTOPHER
KOKKINAKOS
(AC 33912)

Lavine, Beach and Bear, Js.

Argued March 4—officially released May 28, 2013

*Katherine S. Goodbody,* assigned counsel, with whom, on the brief, was *Christopher Kokkinakos,* pro se, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *David Shepack*, state's attorney, and *Jonathan Knight*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Christopher Kokkinakos, appeals from the denial of his motion to correct an illegal sentence. The defendant claims that the court erred in denying his motion to correct because his sentence was imposed in an illegal manner by virtue of the court's failure to make a finding, pursuant to General Statutes (Rev. to 2007) § 53a-40 (j), that enhancement of his sentence was in the public interest.[1] We reverse the judgment of the trial court.

The record established that on May 8, 2007, the defendant stole a purse from a home in Thomaston and subsequently made purchases with credit cards taken from the purse. The state filed a substitute part A information charging the defendant with burglary in the second degree, credit card theft, and failure to appear, after the defendant failed to appear for a court date in connection with the May 8, 2007 incident. The state also filed a part B information, charging that the defendant was convicted of burglary in the second degree in 1990, and that the defendant was therefore subject to an enhanced penalty pursuant to the persistent serious felony offender statute, General Statutes (Rev. to 2007) § 53a-40 (c). On May 30, 2008, the defendant pleaded guilty

---

[1] The defendant also claims in his brief that the court erred in denying his motion to correct his sentence because § 53a-40 was inapplicable in that he qualified for an exemption to enhancement pursuant to subsection (c). At oral argument before this court, the defendant expressly abandoned this claim, and, accordingly, we consider it waived. See *Rostain* v. *Rostain*, 213 Conn. 686, 688 n.3, 569 A.2d 1126 (1990).

The defendant also argued that the court sentenced him on the basis of unreliable information. In light of our reversal on his main claim, we need not reach this issue.

under the *Alford* doctrine[2] to the part A and part B informations. On August 8, 2008, the defendant was sentenced to twenty years incarceration, execution suspended after eight years, with five years probation. The defendant later filed a motion to correct an illegal sentence. In that motion, the defendant claimed that a finding that the public interest would be best served by his extended incarceration was never made, and the enhancement of his sentence by virtue of the part B information was thus illegal. The court denied the motion, and this appeal followed.

Practice Book § 43-22 provides that "[t]he judicial authority may at any time correct an illegal sentence . . . ." Interpreting § 43-22, our Supreme Court, in *State v. Lawrence*, 281 Conn. 147, 913 A.2d 428 (2007), stated: "Practice Book rules do not ordinarily define subject matter jurisdiction. . . . Because the judiciary cannot confer jurisdiction on itself through its own rule-making power, § 43-22 is limited by the common-law rule that a trial court may not modify a sentence if the sentence was valid and its execution has begun. . . . Therefore, for the trial court to have jurisdiction to consider [a defendant's] claim of an illegal sentence, the claim must fall into one of the categories of claims that, under the common law, the court has jurisdiction to review. . . .

"Connecticut courts have considered four categories of claims pursuant to § 43-22. The first category has addressed whether the sentence was within the permissible range for the crimes charged. . . . The second category has considered violations of the prohibition against double jeopardy. . . . The third category has involved claims pertaining to the computation of the length of the sentence and the question of consecutive or concurrent prison time. . . . The fourth category

---

[2] *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

has involved questions as to which sentencing statute was applicable." (Citations omitted; internal quotation marks omitted.) Id., 155–57.

The court also has jurisdiction to correct sentences imposed in an illegal manner. This category includes sentences that are "within the relevant statutory limits but . . . imposed in a way which violates [the] defendants' right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Internal quotation marks omitted.) *State* v. *McNellis*, 15 Conn. App. 416, 444, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988).

"A denial of a motion to correct an illegal sentence is reviewed under the abuse of discretion standard. . . . Of course, when the court is called upon to exercise its legal discretion, we must determine whether the trial court correctly interpreted and applied the law." (Citations omitted.) *State* v. *Brown*, 133 Conn. App. 140, 148, 34 A.3d 1007, cert. granted on other grounds, 304 Conn. 901, 37 A.3d 745 (2012).

A brief overview of the persistent felony offender statute, § 53a-40, is helpful. Referring to § 53a-40 as it read prior to the January 25, 2008 effective date of Public Acts, Special Session, January, 2008, No. 08-1, § 7, our Supreme Court said: "Section 53a-40 sets forth six categories of persistent felony offenders in subsections (a) through (f), and each subsection has a corresponding provision that provides for an increased sentence on the basis of two factual predicates: first, that the defendant was found to be a persistent felony offender as defined in the respective subsection and, second, that *the court is of the opinion that* such person's history and character and the nature and circumstances of such person's criminal conduct indicate that

*extended incarceration will best serve the public inter-est . . . .'* The court may not impose an extended sen-tence unless both factual predicates are satisfied."[3] (Citations omitted; emphasis added.) *State* v. *Michael A.*, 297 Conn. 808, 818–19, 1 A.3d 46 (2010) (discussing General Statutes [Rev. to 1999] § 53a-40 [a] through [f]).

On September 11, 2007, after the defendant had com-mitted the underlying offenses on May 8, 2007, but before he was sentenced on August 8, 2008, our Supreme Court officially released its decision in *State* v. *Bell*, 283 Conn. 748, 931 A.2d 198 (2007). In *Bell*, the court, relying on the principles stated in *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), held that "[the 2007 revision of General Statutes] § 53a-40 (h) is unconstitutional, to the extent that it does not provide that a defendant is entitled to have the *jury* make a required finding [that] expose[s] the defendant to a greater punishment than that author-ized by the jury's guilty verdict . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Bell*, supra, 283 Conn. 810. "After the Supreme Court's 2007 decision in *Bell*, the General Assembly accordingly amended § 53a-40, effective January 25, 2008, to elimi-nate the public interest finding altogether. See Public Acts, Spec. Sess., January, 2008, No. 08-1, § 7 [(Spec. Sess. P.A. 08-1)]." *State* v. *Reynolds*, 126 Conn. App. 291, 301, 11 A.3d 198 (2011).

The defendant argues that the court erred in denying his motion to correct an illegal sentence. He claims that

[3] Prior to the enactment of Public Acts, Special Session, January 2008, No. 08-1, § 7, General Statutes (Rev. to 2007) § 53a-40 (j) provided that a trial court may impose a greater sentence than that authorized for the crime for which a person presently stands convicted when that person "has been found to be a persistent serious felony offender, and the court is of the opinion that such person's history and character and the nature and circum-stances of such person's criminal conduct indicate that extended incarcera-tion will best serve the public interest . . . ."

the sentencing court applied the revision of § 53a-40 that went into effect January 25, 2008, which eliminated the requirement that the court—or the jury after *Bell*—make the public interest determination, rather than General Statutes (Rev. to 2007) § 53a-40, which existed prior to the enactment of Spec. Sess. P.A. 08-1 and required that the court make the public interest determination. He argues that, in the context of a plea, the court was required to make the public interest finding if the sentence were to be enhanced. Because no public interest finding was made by the court, the defendant argues, his enhanced sentence should be set aside.

The state agrees that General Statutes (Rev. to 2007) § 53a-40, as amended by Spec. Sess. P.A. 08-1, did not apply to the defendant's case, but contends that the defendant, by pleading guilty to the part B information, acknowledged every relevant element of § 53a-40, including an admission that an enhanced sentence was in the public interest.

As both parties agree, the amended revision of § 53a-40, eliminating the need for a specific finding of public interest, did not apply in this case. See *State* v. *Graham*, 56 Conn. App. 507, 510, 743 A.2d 1158 (2000) (in determining whether change in statutory law applies in criminal cases courts generally apply law in existence on date of offense); see also *State* v. *Ross*, 230 Conn. 183, 283, 646 A.2d 1318 (1994) (relying on date of offense in retroactivity analysis of change in statutory law), cert. denied, 513 U.S. 1165 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995). Special Session P.A. 08-1 provided that it was effective January 25, 2008, and the legislature did not indicate that it should apply to pending matters.

We next consider whether *Bell* applies to the enhancement in this case. Ordinarily, it is the general rule that "judgments that are not by their terms limited

to prospective application are presumed to apply retroactively . . . to cases that are pending . . . ." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 454, 10 A.3d 942 (2011); see *State* v. *Ryerson*, 201 Conn. 333, 339, 514 A.2d 337 (1986) ("If a new constitutional doctrine is truly right, we should not reverse lower courts which have accepted it; nor should we affirm those which have rejected the very arguments we have embraced. . . . [C]omplete retroactive effect is most appropriate where a new constitutional principle is designed to enhance the accuracy of criminal trials." [Citations omitted; internal quotation marks omitted.]); see also *State* v. *Bell*, 303 Conn. 246, 258, 33 A.3d 167, (2011) (retroactive application of § 53a-40 [h] as modified by *State* v. *Bell*, supra, 283 Conn. 748, does not violate ex post facto principles embodied in fourteenth amendment).

There are exceptions to this general rule. See, e.g., *Williams* v. *Commissioner of Correction*, 133 Conn. App. 96, 104 n.5, 33 A.3d 883 (2012). In *State* v. *Henderson*, 130 Conn. App. 435, 448, 24 A.3d 35, cert. granted, 302 Conn. 938, 28 A.3d 992 (2011), the defendant appealed from the dismissal of his motion to correct an illegal sentence and a panel of this court held that *Bell* was not subject to retroactive application in the circumstances of that case. *Henderson* does not apply directly to the present case because in *Henderson* the defendant's case was final and had been affirmed on direct appeal; see *State* v. *Henderson*, 37 Conn. App. 733, 658 A.2d 585, cert. denied, 234 Conn. 912, 660 A.2d 355 (1995); when *Bell* was decided, unlike the present case, which was pending in the trial court when *Bell* was decided.

It does not matter in this case, however, whether *Bell* applies retroactively to the enhancement procedure. If *Bell* does not apply in this case, then the *court* would have been required to make the public interest finding

if the sentence were to be enhanced. If *Bell* were to apply in this case and the *jury* was required to make the finding, the defendant waived any right to a jury—as opposed to a court—determination of public interest by pleading guilty. The defendant's waiver of a jury trial on the part B information met the applicable standard for a knowing, intelligent and voluntary waiver. See *State* v. *Gore*, 288 Conn. 770, 787–89, 955 A.2d 1 (2008) (canvass to waive right to jury trial should assure trial court that defendant understands his right to jury trial, understands he possesses authority to waive it, and that he voluntarily chooses to waive it and elect court trial); see also *State* v. *Michael A.*, supra, 297 Conn. 821–26 (applying *Gore* to conclude that defendant's plea of nolo contendere on part B information waived right to jury trial on public interest). Furthermore, the court's canvass included an express acknowledgement by the defendant of the waiver of any right to a jury determination on public interest. As a result of the guilty plea, the *court* would appropriately make the public interest determination. See *State* v. *Bell*, supra, 283 Conn. 812 ("in those cases in which the defendant chooses to waive his right to a jury trial under § 53a-40, the court may continue to make the requisite [public interest] finding").

In any event, because the defendant effectively waived his right to a *jury* finding of public interest, the court was the proper entity to make the determination, if such a determination was not waived altogether. The state argues that the court was not required to make a public interest finding because, during the canvass, the defendant explicitly acknowledged that the public interest would be served by an enhanced sentence. The defendant argues that he did not admit that his sentence enhancement was in the public interest, and, accordingly, the court was required to make a public interest finding if one were to be made.

Following the defendant's guilty plea, the court canvassed the defendant to ascertain whether he had enough time to discuss the matter with his attorney and he was satisfied with his attorney's advice, whether he was currently under the influence of alcohol, drugs or medication, whether by pleading guilty he knew that he was giving up his right to a jury trial, whether his plea was voluntary, and whether he was forced or threatened to plead guilty. The court then discussed the persistent serious felony offender statute in response to an earlier question posed by the defendant. The court noted that, under the recent changes in case law, the defendant had a right to a jury determination of public interest, and the defendant agreed that that answered his question. The following colloquy then transpired:

"The Defendant: [D]oes that exclude the discretion from the judge. In other words does the judge have the sole discretion?

"The Court: You're not going to have a trial. You've plead guilty. So it's all in front of the court so . . . it's a moot point, what you're saying. As I'm sitting here today I don't know whether or not a jury would determine whether there'd be an enhancement or a court only, because you're not having a trial. I will tell you the sentence as you plead to it today is going to be up to me.

"The Defendant: I see, sir. Okay.

\* \* \*

"The Court: So I think the point that you're making is, well, does a judge determine that or a jury? That's out of the picture now. It's all the court that's going to determine what your sentence is.

"The Defendant: . . . I'd prefer to actually have that happen and to avoid the actual jury conseq— you know

what I mean? To go through the jury thing. Because I didn't want to have to go—

"The Court: You're not going to have a jury because you plead guilty to a—

"The Defendant: Well, that's why I did it.

* * *

"The Court: Unless you want to withdraw your plea. I'll allow you to withdraw your plea if you still have questions.

"The Defendant: No. I want to dispose of this, Your Honor."

This discussion pertained to the defendant's waiver of a jury trial as to § 53a-40. He admitted that he did not want a jury trial on the § 53a-40 issue, but he never expressly admitted that an enhancement of his sentence would serve the public interest. The state argues that even if the canvass did not include an explicit admission of the public interest factor, we can presume that the defendant's counsel explained the offenses to him and that he had notice of the public interest element and waived his right to trial on that element. See *State* v. *Heyliger*, 114 Conn. App. 193, 198, 969 A.2d 194 (2009) ("[e]ven without an express statement by the court of the elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit" [internal quotation marks omitted]). The state essentially argues that by virtue of the defendant's guilty plea on the part B information, he admitted to a finding that an enhanced sentence would be in the public interest. *Bell* and *Reynolds* inform our discussion.

Our Supreme Court in *State* v. *Bell*, supra, 283 Conn. 812, contemplated cases in which the defendant would

plead guilty to being a persistent offender under § 53a-40. The court stated: "Of course, in those cases in which the defendant chooses to waive his right to a jury trial under § 53a-40, the court may continue to make the requisite finding. Additionally, the court properly may impose an enhanced sentence if the defendant admits to the fact that extended incarceration is in the public interest." Id.

In *State* v. *Reynolds*, supra, 126 Conn. App. 296, the defendant pleaded guilty to the part B information charging him with being a persistent serious felony offender under § 53a-40 (c). The trial court determined that the defendant had waived his right to a jury trial on the public interest determination. Id., 299–312. This court concluded that the trial court erred in failing to affirmatively make a public interest determination in light of the fact that the defendant had not expressly admitted that enhancement of his sentence was in the public interest and, accordingly, vacated the judgment on the part B information and remanded to the trial court for a public interest determination. Id., 312–14. Under our case law, then, there are two ways in which the public interest factor can be satisfied in the context of a guilty plea. The court can make an express finding, or the defendant can expressly agree to the determination.[4]

Accordingly, the defendant is not presumed to have waived a court finding on the public interest factor by virtue of his guilty plea. Because he did not expressly agree that the public interest factor had been satisfied, and the court did not expressly make such a finding, we conclude that the court erred in denying his motion to correct an illegal sentence.

We, therefore, must remand the case with direction to the trial court as fact finder to make the finding

[4] Of course, for offenses committed after January 25, 2008, no finding that the enhancement of the sentence is in the public interest is required.

whether extended incarceration was in the public interest or for the defendant to make the appropriate acknowledgement and, depending on that finding or acknowledgement, to determine whether an enhanced sentence is appropriate. See id., 314.

The judgment denying the motion to correct an illegal sentence is reversed and the case is remanded for further proceedings in accordance with the preceding paragraph.

In this opinion the other judges concurred.