******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MITCHELL
HENDERSON
(SC 19213)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Robinson and
Vertefeuille, Js.

*Argued March 26—officially released July 22, 2014*

*Heather Golias*, assigned counsel, for the appellant
(defendant).

*Emily L. Graner Sexton*, special deputy assistant
state's attorney, with whom, on the brief, were *Gail
P. Hardy*, state's attorney, and *Anne Mahoney*, senior
assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. After the trial court, *Espinosa, J.*, imposed an enhanced sentence on the defendant, Mitchell Henderson, as a persistent dangerous felony offender and a persistent serious felony offender, pursuant to General Statutes (Rev. to 1993) § 53a-40 (f) and (g),[1] the defendant filed a motion to correct an illegal sentence claiming that he was constitutionally entitled to have a jury make the finding required by that statute that an enhanced sentence would be in the public interest. The trial court, *Gold, J.*, dismissed that motion. The defendant then filed a second motion to correct an illegal sentence claiming that Judge Espinosa had failed to make the required finding. The trial court, *Dewey, J.*, denied the second motion on the ground that it raised the same claim as the first motion and, therefore, was barred by the doctrine of res judicata. The defendant appeals[2] from that judgment, contending that the claims that he raised in his first and second motions to correct an illegal sentence were not identical for purposes of the doctrine of res judicata. We affirm Judge Dewey's judgment on the alternative ground that Judge Espinosa actually found that imposing an enhanced sentence on the defendant would best serve the public interest.

The record reveals the following undisputed facts and procedural history. The defendant was convicted in 1993, after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), attempt to escape from custody in violation of General Statutes (Rev. to 1991) §§ 53a-171, 53a-168 (2) and 53a-49, assault in the third degree in violation of General Statutes (Rev. to 1991) § 53a-61 (a) (1), and threatening in violation of General Statutes (Rev. to 1991) § 53a-62 (a) (1). The defendant pleaded guilty to criminal mischief in the third degree in violation of General Statutes (Rev. to 1991) § 53a-117 (a) (1) (A). In addition, the defendant pleaded guilty to being a persistent dangerous felony offender in violation of § 53a-40 (a) and to being a persistent serious felony offender in violation of § 53a-40 (b).

At the defendant's sentencing hearing, the prosecutor argued that, in light of his extensive criminal background, the defendant had "become a predator upon society" and that he was "a gross danger to society every time he's at liberty." The prosecutor further argued that "we've reached a point where society cannot be put in risk of this defendant any longer."[3] Accordingly, the prosecutor asked the trial court to impose an enhanced sentence of forty-seven and one-half years imprisonment. Immediately after the prosecutor made these statements, Judge Espinosa made remarks regarding the defendant's history and character and the nature and circumstances of his criminal conduct and concluded that, in light of his "serious" criminal history and "troubling . . . tendency toward violence," she

had "no alternative or much of an alternative but then to impose a lengthy sentence of incarceration."[4] Judge Espinosa sentenced the defendant to an enhanced sentence of forty-five years imprisonment, execution suspended after thirty-five years, with five years of probation, pursuant to § 53a-40 (f) and (g).

On December 9, 2008, the defendant filed his first motion to correct an illegal sentence pursuant to Practice Book § 43-22,[5] in which he contended that, pursuant to this court's decision in *State* v. *Bell*, 283 Conn. 748, 810, 931 A.2d 198 (2007),[6] he was constitutionally entitled to have a jury determine whether extended incarceration would "serve the public interest" for purposes of § 53a-40 (f) and (g).[7] The trial court, *Gold, J.*, dismissed the motion for lack of subject matter jurisdiction, reasoning that "the sentencing court did not impose an illegal sentence or impose a sentence in an illegal manner; accordingly, it lacked jurisdiction because the defendant's motion fell outside of the purview of Practice Book § 43-22." *State* v. *Henderson*, 130 Conn. App. 435, 440, 24 A.3d 35 (2011).[8] The defendant appealed from the judgment of dismissal to the Appellate Court, which concluded that the trial court improperly had determined that it lacked subject matter jurisdiction. Id., 446. The Appellate Court also concluded, however, that the defendant's motion should be denied because *Bell* did not apply retroactively, and that the defendant's motion failed on its merits. Id., 448.

After the Appellate Court issued its decision, the defendant filed his second motion to correct an illegal sentence in which he contended that Judge Espinosa had failed to make the required finding pursuant to § 53a-40 (f) and (g) that an enhanced sentence would "best serve the public interest . . . ."[9] At a hearing on that motion before the trial court, *Schuman, J.*, the defendant indicated that he wanted to withdraw the motion and submit another one with the assistance of an attorney. Judge Schuman agreed to adjourn the hearing and allow the defendant to apply for the services of a public defender. Thereafter, the defendant, represented by counsel, filed a substitute motion making the same claim. On May 10, 2012, the trial court, *Dewey, J.*, rendered judgment denying the motion. Judge Dewey concluded, sua sponte, that the defendant's claim was barred by the doctrine of res judicata because it was identical to the claim that he had raised in his first motion to correct an illegal sentence.

This appeal followed. The defendant claims that Judge Dewey improperly determined that his second motion to correct an illegal sentence was barred by the doctrine of res judicata because the claim that he raised in that motion was distinct from the claim that he raised in his first motion. The state contends that, to the contrary, the claims were identical. The state also claims that Judge Dewey's judgment may be affirmed on the

alternative ground that the defendant waived his claim that Judge Espinosa had failed to make a public interest finding when the defendant judicially admitted that Judge Espinosa had made such a finding in his first motion to correct. Specifically, the state points out that the defendant stated in his first motion to correct an illegal sentence that "Judge Espinosa, as part of the sentencing of the defendant and pursuant to [§ 53a-40 (f) and (g)], concluded that the defendant's 'history and character and the nature and circumstances of [the defendant's] criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest.' "

After oral argument, this court ordered the parties to submit supplemental briefs on the question of whether Judge Espinosa had "made a finding, pursuant to . . . § 53a-40 (f) and (g), that the defendant's 'history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration will best serve the public interest . . . .' " The parties were also ordered to address the question of whether, if this court were to conclude that Judge Espinosa had made the required finding, this court could affirm Judge Dewey's judgment denying the defendant's motion to correct an illegal sentence on this alternative ground even though the state had not distinctly raised that claim on appeal to this court.[10] We conclude that the judgment of the trial court should be affirmed on the alternative ground that Judge Espinosa made the requisite public interest finding.

We first address the question of whether this court may raise, sua sponte, the question of whether Judge Dewey's judgment denying the defendant's motion to correct may be affirmed on the alternative ground that Judge Espinosa made the required public interest finding. This court has held that, when an appellant would not be entitled to a directed judgment upon prevailing on the claim raised on appeal, the reviewing court may raise, sua sponte, an alternative ground for affirmance that would be likely to arise on remand. *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 166, 84 A.3d 840 (2014) (citing interests of judicial economy). In the present case, if the defendant were to prevail on his claim that Judge Dewey improperly denied his motion to correct an illegal sentence on res judicata grounds, this court would remand the case to the trial court for consideration of the merits of the motion. In that event, the state would be entitled to, and likely would, claim on remand that the motion should be denied because Judge Espinosa in fact made the public interest finding, as the state already had made that claim in its memorandum of law in opposition to the defendant's motion to correct. In addition, the record is adequate for consideration of the issue and the defendant has identified no specific prejudice that he will suffer if we consider it.[11] Accord-

ingly, we conclude that we may address this alternative ground for affirmance even though the state did not distinctly raise it on appeal.

We conclude that Judge Espinosa in fact found that the defendant's "history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest . . . ." General Statutes (Rev. to 1993) § 53a-40 (f); see General Statutes (Rev. to 1993) § 53a-40 (g). As the state points out, whether the defendant should receive an enhanced sentence pursuant to § 53a-40 (f) and (g) was the only question that was before Judge Espinosa at the sentencing hearing. After the prosecutor argued for an enhanced sentence on the basis of the defendant's history and character and the nature and circumstances of his criminal conduct, Judge Espinosa concluded that, in light of the defendant's "serious" criminal history and his "troubling . . . tendency toward violence," she had no alternative but to impose a lengthy sentence pursuant to § 53a-40 (f) and (g). Although Judge Espinosa did not expressly state that she was of the opinion that the defendant's serious and violent criminal history indicated that extended incarceration would "best serve the public interest," this court has never required the talismanic recital of specific words or phrases if a review of the entire record supports the conclusion that the trial court properly applied the law. See, e.g., *State* v. *Robinson*, 227 Conn. 711, 731, 631 A.2d 288 (1993) ("[t]he fact that the trial court did not utter the talismanic words that the evidence was 'more probative than prejudicial' does not indicate that it did not make such a determination"); see also *State* v. *Elson*, 311 Conn. 726, 752–53,   A.3d   (2014) (noting "this court's refusal in a variety of contexts to attach talismanic significance to the presence or absence of particular words or phrases" [internal quotation marks omitted]). Rather, this court presumes that the trial court properly applied the law in the absence of evidence to the contrary. See *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 9, 826 A.2d 1088 (2003) ("the trial court is presumed to have applied the law correctly, and it is the burden of the appellant to show to the contrary" [internal quotation marks omitted]). Moreover, regardless of whether the defendant's statement in his first motion to correct that Judge Espinosa had made the public interest finding was a binding judicial admission, as the state claims, the fact that he made that statement supports our conclusion that such a finding reasonably may be inferred from the record. Accordingly, we conclude that it is implicit in Judge Espinosa's remarks regarding the defendant's serious and violent criminal history, and in her statement that she had no alternative but to impose a lengthy sentence, that she found that an enhanced sentence would best serve the public interest.

In support of his claim to the contrary, the defendant relies on the Appellate Court's decisions in *State* v. *Kokkinakos*, 143 Conn. App. 76, 66 A.3d 936 (2013), and *State* v. *Reynolds*, 126 Conn. App. 291, 11 A.3d 198 (2011).[12] In *Reynolds*, the Appellate Court held that, under this court's decision in *State* v. *Bell*, supra, 283 Conn. 812, when a defendant has pleaded guilty to being a persistent serious felony offender, the trial court must make the determination that an enhanced sentence will best serve the public interest. *State* v. *Reynolds*, supra, 311–12. Because the state conceded in *Reynolds* that the trial court had not made the requisite finding, the Appellate Court held that the case had to be remanded to the trial court so that it could make the finding. Id., 312. In *State* v. *Kokkinakos*, supra, 78–79, the defendant pleaded guilty to being a persistent felony offender. The state contended that the trial court was not required to make a public interest finding because, by pleading guilty to the charge, the defendant had implicitly "admitted to a finding that an enhanced sentence would be in the public interest." Id., 86. The Appellate Court rejected this claim, holding that, under *Reynolds*, "there are two ways in which the public interest factor can be satisfied in the context of a guilty plea. The court can make an express finding, or the defendant can expressly agree to the determination." Id., 87. Because neither of those events had occurred, the Appellate Court held that the case had to be remanded to the trial court to make a public interest finding or for the defendant to acknowledge that an enhanced sentence would best serve the public interest. Id., 87–88.

We conclude that the defendant's reliance on *Reynolds* and *Kokkinakos* is misplaced. In both of those cases, there was no dispute that the trial court had failed to make the required public interest finding. Thus, in both cases, the issue before the Appellate Court was whether the trial court is required to make such a finding when the defendant has pleaded guilty to being a persistent felony offender, and not whether a public interest finding can be inferred from the record even though the trial court has not talismanically recited the statutory language.[13] For the reasons that we previously have explained herein, we conclude that a recital of the statutory language is not required. Accordingly, we affirm Judge Dewey's judgment denying the defendant's motion to correct an illegal sentence on the alternative ground that Judge Espinosa made the necessary finding that imposing an enhanced sentence on the defendant would best serve the public interest, as required by § 53a-40 (f) and (g).

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes (Rev. to 1993) § 53a-40 provides in relevant part: "(a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, aggravated sexual assault in the first degree, sexual assault in the third

degree with a firearm, robbery in the first or second degree, or assault in the first degree, and (2) has been, prior to the commission of the present crime, convicted of and imprisoned under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution, for any of the following crimes: (A) The crimes enumerated in subdivision (1) of this subsection, murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2) of this subsection.

"(b) A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. This subsection shall not apply where the present conviction is for a crime enumerated in subdivision (1) of subsection (a) of this section and the prior conviction was for a crime other than those enumerated in subsection (a) of this section. . . .

"(f) When any person has been found to be a persistent dangerous felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, may impose the sentence of imprisonment authorized by said section for a class A felony.

"(g) When any person has been found to be a persistent serious felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration will best serve the public interest, the court in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony. . . ."

All references in this opinion to § 53a-40 are to the 1993 revision of the statute.

[2] The defendant appealed from the trial court's judgment denying his second motion to correct an illegal sentence to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[3] In addition, the prosecutor argued: "[T]he defendant comes before this court with an extensive past criminal record. He has a record of twenty-two past convictions; ten felonies, twelve for misdemeanors. Of those prior convictions, eleven involve weapons and violence, threat of violence or some type of restraint. There are five prior robbery convictions, one prior escape conviction. There's a continuing pattern of criminal conduct which goes back to 1976 . . . [that] [i]ncludes the same acts and the same types of acts and the same modus operandi. The defendant has been sentenced on a number of occasions and those sentences have not deterred [him from] engaging in continued criminal activity. By my count, since 1976, the defendant has been free and clear of the Department of Correction for only approximately thirty-five months. He has been sentenced on those robberies in the past. He received substantial jail sentences and it's failed to deter him.

"I note he has five prior robbery convictions and there's a similarity in many of those cases to this case. I would note that in three of the prior cases there has been a use of weapons, as in this case. Two of the prior cases involved the use of a knife. Two other prior occasions, the victim suffered injuries. I note that in one of his prior robberies, he committed that offense while either on supervised home release or on parole and finally, in two of the prior cases, the defendant either escaped or attempted to flee to avoid capture.

"And going to those particular incidents which I have set forth in my memoranda, he has a robbery third from 1980 in which the victim suffered a serious physical injury. [In] 1981, robbery first degree and carrying a dangerous weapon in which he was armed with a knife. Another robbery in the first degree . . . which is a 1981 conviction at which time he was armed with a pellet gun. He was involved in a substantial car chase with various police departments, involved running a roadblock almost injuring officers from the Enfield Police Department and was finally apprehended after he crashed the car in the Commonwealth of Massachusetts.

"He has another 1981 conviction for robbery third degree and assault in the second degree in which he robbed an individual while being held at the old Morgan Street lockup.

"And finally, he has a 1987 robbery first degree conviction from the town of East Hartford in which he committed this offense while armed with a knife. He fled from the officers and had to be captured. He had just been released on parole three days previously and after his arraignment at [geographical area number twelve], he escaped from the sheriff's van and wasn't recaptured for a number of months.

"And the instant case, the defendant, while armed with a knife, attempted to kill his victim—threatened to kill the victim—pardon me. He grabbed the victim, physically handled her. He attempted to escape from the police car and caused substantial damage to it. At the time of this offense, he was again on supervised home release and had only been released three months prior to this offense.

"This defendant is an out-and-out recidivist. His record makes it obvious. He continues to be committed to the pursuit of violent crime.

"Now, [the defendant] is not an unintelligent person. He is extremely intelligent and articulate as he showed by defending himself in this trial. This behavior is a commitment by this defendant to this type of activity and I would respectfully submit to the court that [the defendant] is not a person who's going to be rehabilitated. The only option I believe that's available to this court to protect society is by incarcerating this defendant for as long a period as possible and this is not something that I would recommend rashly or ask the court to adopt rashly, but this is a gentleman who, if he continues this behavior, is eventually going to kill someone and it's only by the grace of God that he hasn't already.

"It's time that this defendant be placed somewhere where he won't hurt anyone. Therefore, the state will recommend, on the count of robbery in the first degree as a persistent dangerous felony offender, a sentence of twenty-five years to serve. On the count of criminal attempt to escape from custody, as a persistent serious felony offender, a sentence of twenty years to serve. On the counts of assault in the third degree, threatening, a sentence of one year to serve on each and on the count of criminal mischief in the third degree, to which the defendant entered a guilty plea, a [sentence] of six months to serve. I would ask that all of those sentences run consecutively for a total effective sentence of forty-seven and one-half years to serve, Your Honor."

[4] Judge Espinosa addressed the defendant, stating: "All right. . . . [Y]ou are a puzzlement, to say the least. You conducted yourself very capably during the trial of your case. Anyone who spends any limited time with you realizes that you are an intelligent person. You are articulate. You have an ability to communicate, which should have served you well in other pursuits.

"Unfortunately, you've displayed all of these positive characteristics in a courtroom as a defendant rather than on the outside helping yourself and helping your family. As I said, you're a wonderment and a curiosity because someone of your potential and your ability doesn't have to be here. I cannot understand why you're here given your background, given your noncriminal background.

"Then we get to your criminal background. Your criminal history is very serious and most troubling is your tendency toward violence.

"You claim that you have a serious drug problem and I don't doubt that you use drugs. I find it interesting that although you say you have such a serious drug problem, you've only one conviction for drugs and that was in 1979, possession of drugs, six months. But after that time, you have no convictions for drugs, which is different than we see with someone with a serious drug problem. Usually, the convictions associated with serious drug offenders tend to be associated with drugs. Yours [are] not. Your background is that of independent crimes, at least convictions, and violent crimes and repeat crimes—robberies, robberies with dangerous instruments, threats to kill people. And we have here on a scale your good parts—your good aspects

and then on the other side, you have all of these crimes that, it's the court's opinion, that really are not necessary.

"You came from a good family. You have a wife whom I commend for her loyalty. Her love for you must be something so profound that it has maintained her on your side in spite of the pain that I'm sure you've caused her. She was here with you during the trial. She spoke on your behalf. She is an upstanding citizen of the community and you had this woman by your side to help you and she couldn't do anything.

"Now, both she and your pastor are asking the court to finally do something about your drug problem. You've been on probation before and you've never asked, apparently—it's never been made a condition of your probation that you get drug treatment but you've had plenty of opportunity to stay away from drugs. You've had times when you were in jail and you came out, you weren't addicted to drugs. But you went back to it. At least, physically addicted. I understand that there is a psychological addiction, as well, that may have led you to some of these acts but you could have asked for help earlier and you didn't.

"So, really, at this point in your life, having received all of the chances that you've received, the court really has no alternative or much of an alternative but then to impose a lengthy sentence of incarceration."

[5] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[6] This court held in *State* v. *Bell*, supra, 283 Conn. 810, that § 53a-40 (h), which in 1993 was codified as subsection (f), was "unconstitutional, to the extent that it does not provide that a defendant is entitled to have the jury make a required finding [that] expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict." (Internal quotation marks omitted.)

[7] The defendant previously had filed a direct appeal from the judgment of conviction and two petitions for writs of habeas corpus that are not at issue in this appeal. See *Henderson* v. *Commissioner of Correction*, 104 Conn. App. 557, 935 A.2d 162 (2007), cert. denied, 285 Conn. 911, 943 A.2d 470 (2008); *Henderson* v. *Commissioner of Correction*, 66 Conn. App. 868, 786 A.2d 450 (2001); *State* v. *Henderson*, 37 Conn. App. 733, 658 A.2d 585, cert. denied, 234 Conn. 912, 660 A.2d 355 (1995).

[8] On October 4, 2011, this court granted the defendant's petition for certification to appeal from the Appellate Court's decision in *State* v. *Henderson*, supra, 130 Conn. App. 435. *State* v. *Henderson*, 302 Conn. 938, 28 A.3d 992 (2011). On June 4, 2013, this court dismissed the certified appeal on the ground that certification had been improvidently granted. *State* v. *Henderson*, 308 Conn. 702, 706, 66 A.3d 847 (2013).

[9] This court held in *State* v. *Bell*, supra, 283 Conn. 802, that, under the clear language of the statute, "the public interest determination is . . . an ultimate factual predicate to the imposition of a mandatory enhanced sentence" that must be made by the trial court. Because the court's decision in *Bell* that this aspect of the statute is unconstitutional does not apply retroactively, the statute is applied to the defendant in the present case according to its express terms. See *State* v. *Henderson*, supra, 130 Conn. App. 448.

[10] In its supplemental brief, the state contends that this issue is encompassed by the claim that it made in its original brief to this court that the defendant had judicially admitted in his first motion to correct an illegal sentence that Judge Espinosa made the public interest finding. We disagree. In its original brief, the state pointed out that it had argued to the *trial court* that Judge Espinosa had made the required factual finding, but, aside from one footnote quoting one sentence from Judge Espinosa's remarks at the sentencing hearing, the state provided this court with no citations to the record and no legal analysis in support of that claim. Rather, the state relied solely on the defendant's statement in his first motion to correct that Judge Espinosa had made the public interest finding and on this court's cases governing judicial admissions.

[11] In his supplemental brief, the defendant states conclusorily that he will suffer prejudice because the state did not raise this claim in its brief to this court. We disagree. If the prejudice inherent in reviewing an alternative ground for affirmance that was not raised by the appellee on appeal were always sufficient reason, in and of itself, to refuse to consider such issues, no such issue could *ever* be considered.

[12] The statute at issue in both *Reynolds* and *Kokkinakos* was General

Statutes (Rev. to 2007) § 53a-40 (j). The pertinent language of that statute is the same as the relevant language of General Statutes (Rev. to 1993) § 53a-40 (f) and (g).

[13] To the extent that the Appellate Court's holding in *State* v. *Kokkinakos*, supra, 143 Conn. App. 87, that the trial court must make an "express finding" means that the trial court must actually consider a defendant's history and character and the nature and circumstances of his criminal conduct before imposing an enhanced sentence, and cannot assume that the defendant agreed to an enhanced sentence by pleading guilty, the state does not challenge that holding in the present case. To the extent that the Appellate Court concluded that the trial court must talismanically recite the relevant statutory language, however, any such holding is hereby overruled. We emphasize, however, that it would be preferable for the trial court to recite the statutory language in order to remove all doubt as to whether it made the finding.

———————————————————